IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 0420225-CIV-SEITZ/BANDSTRA



MOSHE SAPERSTEIN, and
the ESTATE of AHUVA AMERGI with
Rafi Amergi, as Administrator, Executor
and/or Personal Representative,

    Plaintiffs,

v.

The PALESTINIAN AUTHORITY;
The PALESTINE LIBERATION
ORGANIZATION; The PALESTINIAN
PREVENTIVE SECURITY SERVICES;
YASSER ARAFAT and
YASER MAHMUD ALKATIV,

    Defendants.
_____/

## AMENDED COMPLAINT

COME NOW the Plaintiffs, Moshe Saperstein ("SAPERSTEIN") and the Estate of Ahuva Amergi ("AMERGI"), who bring this action, within this Court's jurisdiction, for damages caused by Defendants to Plaintiffs by reason of acts of international terrorism, as defined in federal law, and by reason of related tortious behavior.

This is an action, for damages in excess of 20 Million Dollars, exclusive of interest, costs and attorneys' fees, including all damages caused by the PALESTINIAN AUTHORITY ("PA"), also known as THE PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY, the PALESTINE LIBERATION ORGANIZATION



CASE NO. 040225-CIV-SEITZ/BANDSTRA

("PLO"), the PALESTINIAN PREVENTIVE SECURITY SERVICES ("PPSS"), YASSER ARAFAT ("ARAFAT") and YASER MAHMUD ALKATIV ("ALKATIV").

## NATURE OF THE ACTION

SAPERSTEIN brings his action pursuant to the civil remedies under the Federal Terrorism Act ("TA"), 18 U.S.C. § 2333 (2003), for damages and alleges as follows:

AMERGI brings its action pursuant to the Alien's Action for Tort ("AAT"), 28 U.S.C. § 1350 (2003), seeking redress for the acts of terror committed which violated international law and are proscribed by the U.S. constitution, for damages and alleges as follows:

## GENERAL ALLEGATIONS

1. Defendant PA, is and at all times relevant hereto was, a legal entity as defined in 18 U.S.C. § 2331(3) (2003), established by and existing under and by virtue of international instruments, customary international law and local law, in de jure and de facto control of territories in the Gaza Strip and in the Judea and Samaria regions of the West Bank.

2. Defendant PLO is, and at all times relevant here to was, a legal entity as defined in 18 U.S.C. § 2331(3) (2003), in de jure and de facto control of defendant PA, by virtue of being party to and beneficiary of the international instruments by which defendant PA was established.

3. Defendant ARAFAT is, and at all times relevant hereto was, President of defendant PA and Chairman of defendant PLO, and by virtue of these positions,

- 2 -

PodhurstOrseck

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954 463 4346     www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

in de jure and de facto control of defendant PA and defendant PLO and their various affiliations.

4. Defendant ALKATIV, at all times relevant hereto, was a commander of the Palestinian General Intelligence Services and of the Al Aksa Brigades in Rafiach, an official law enforcement and intelligence agency of defendant PA responsible for law enforcement, maintaining public order and prevention of violence and terrorism in the territories controlled by defendants PA, PLO and ARAFAT. ALKATIV actively recruited young Palestinians for the defendants PA, PLO, ARAFAT and the PPSS. ALKATIV also acted as purchasing agent of armaments for defendants PA, PLO, ARAFAT and PPSS. These armaments would be used by young Palestinian operatives, for acts of terror against Israeli citizens.

5. Defendants PA, PLO and ARAFAT operated, maintained, managed, supervised, and controlled various police forces, militias, paramilitary forces, intelligence services, law-enforcement personnel, jails and penal institutions as part of and in conjunction with their functions and duties under the Oslo Accords and under international customary law and local law applying in the West Bank and Gaza.

6. Defendants PA, PLO and ARAFAT, advocated, encouraged, solicited, facilitated, incited for, sponsored, organized, planned and executed acts of violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank.

- 3 -

CASE NO. 040225-CIV-SEITZ/BANDSTRA

7. The government of the United States, the Congress of the United States, and the government of the State of Israel repeatedly demanded from defendants PA, PLO and ARAFAT that they take effective measures to prevent further terrorist attacks.

8. In violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, defendants PA, PLO and ARAFAT refused and ignored American and Israeli demands to take effective measures to prevent further terrorist attacks.

9. Defendants ARAFAT, PA and PLO, granted financial support to the families of members of Al Aksa Brigades who had been captured or killed while carrying out acts of terrorist violence against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank, thereby providing the Al Aksa Brigades and its members with strong financial incentive to continue to carry out violence and terrorism against such victims.

10. Defendants PA, PLO and ARAFAT knew that the Al Aksa Brigades had committed hundreds of serious offenses against the United States, including the murder of U.S. citizens, yet these defendants openly and consistently received, comforted and assisted the Al Aksa Brigades and its operatives and agents.

11. Moreover, in violation of their undertakings and obligations under the Oslo Accords and under international customary law and local law, defendants PA, PLO and ARAFAT themselves and/or through their respective agents continuously advocated, encouraged, solicited, facilitated and incited the use of

- 4 -

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

violence and terrorism against Jewish civilians in Israel, Gaza and the Judea and Samaria regions of the West Bank.

12. NIZAR D'HLIZ ("D'HLIZ"), a convicted terrorist, belonged to the PA intelligence prevention service and was a member of the Al Akasa Brigades. D'HLIZ purchased armaments for the defendants PA, PLO, ARAFAT and PPS, under the orders of ALKATIV.

13. That in early February 2002, ALKATIV informed D'HLIZ that he recruited a young man, MUHAMAD AL KATZIR ("KATZIR"), who was ready to commit acts of terror on Israelis. ALKATIV requested that D'HLIZ train KATZIR as a terrorist on behalf of defendants PA, PLO, ARAFAT and PPS.

14. After KATZIR's training was complete, ALKATIV ordered D'HLIZ to deliver KATZIR to RAAD ELIDI RAMADAN ("RAMADAN"), an officer of the PA police and a member of the Al Aksa Brigades.

15. That D'HLIZ, on behalf of defendants PA, PLO, ARAFAT and PPS, trained KATZIR on the operation of the AK-47, the techniques to disable passing vehicles and the execution of the vehicles occupants.

16. After completing his training, KATZIR became a member of the Al Akasa Brigades.

17. That in mid February 2002, D'HLIZ delivered KATZIR to RAMANDAN. At this meeting KATZIR met NAIM MUTZRAN ("MUTZRAN"), a convicted terrorist, a member of the Al Akasa Brigade, and a member of the Tanzim of the

- 5 -

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

Fatah, a military force controlled by defendant ARAFAT. MUTZRAN was recruited to Al Aksa Brigade by ALKATIV.

18. At said meeting, KATZIR executed his last will and testament and made a video statement regarding the acts of terror he was to commit.

19. At said meeting, ALKATIV operated the video camera during KATZIR's statements. This video was later distributed by the Tanzim of the Fatah and the PA.

20. On February 18th 2002, MUTZRAN drove KATZIR to the Netzarim road near Kisufim, Israel.

21. At that time and place, KATZIR performed the terrorist act, which he had been trained for, and wounded SAPERSTEIN, murdered AMERGI and killed several Israeli soldiers.

22. Immediately thereafter, and further up the road, KATZIR was located by an Israeli battalion and had exchanged fire with the soldiers. KATZIR died either from his own hand grenade or an explosive device, strapped to his body, which prematurely detonated.

23. D'HLIZ was captured by Israeli police and convicted on 22 criminal counts including unlawful arms dealing and aiding in first-degree murder.

24. D'HLIZ has acknowledged payments by the PLO, the PA, and the PPS to the Al Aksa Brigades. D'HLIZ is currently serving 36 years in an Israeli prison.

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

25. MUTZRAN was captured by Israeli police and convicted on 13 criminal counts including unlawful arms dealing, unlawful military training, and aiding in first degree murder.

26. MUTZRAN has acknowledged payments by the PLO, the PA, and the PPS to the Al Akasa Brigades. MUTZRAN is currently serving 33 years in an Israeli prison.

## SPECIFIC SAPERSTEIN ALLEGATIONS

27. The allegations set forth in paragraphs 1 through 26 are incorporated by reference as though fully set forth herein.

28. On February 18th 2002, on the Netzarim road near Kisufim, Israel, SAPERSTEIN, a US Citizen, was injured during a terrorist attack perpetuated by KATZIR, an agent of defendants PA, PLO, ARAFAT, ALKATIV and a member of the Al Aksa Brigades.

29. On February 18th 2002, SAPERSTEIN was driving his vehicle when he was sprayed with bullets, from an AK-47, shot by KATZIR.

30. On February 18th 2002, SAPERSTEIN attempted to thwart the attack, and prevent attach on other victims, by running down KATZIR with his vehicle.

31. On February 18th 2002, SAPERSTEIN, who previously had lost his right hand and eye during the Yom Kippur War, was shot, by KATZIR, in his left hand during his attempt to run down KATZIR.

32. KATZIR was hit by SAPERSTEIN's vehicle but escaped.

33. That, because of this act of terror, SAPERSTEIN's quality of life and enjoyment of his work has greatly diminished.

PodhurstOrseck
25 West Flagler Street, Suite 800  Miami, FL 33130. Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

## **SPECIFIC AMERGI ALLEGATIONS**

34. The allegations set forth in paragraphs 1 through 26 are incorporated by reference as though fully set forth herein.

35. On February 18th 2002, on the Netzarim road near Kisufim, Israel, AMERGI, an Israeli lawyer, was murdered during the terrorist attack perpetuated by KATZIR, an agent of defendants PA, PLO, ARAFAT, ALKATIV and a member of the Al Aksa Brigades.

36. On February 18th 2002, AMERGI was driving home from Ashkelon, Israel, when her vehicle was sprayed with bullets, from an AK-47, shot by KATZIR. AMERGI was mortally wounded.

37. On February 18th 2002, the shots were heard by soldiers who came to the aid of AMERGI. Two Israeli soldiers were killed while attempting to assist AMERGI.

38. AMERGI was murdered by KATZIR.

39. AMERGI is survived by her husband Rafi Amergi, and her two sons, a four year old and a three year old.

40. Rafi Amergi, as Administrator, Executor and/or Personal Representative of the AMERGI estate brings this action on behalf of all beneficiaries and survivors, including but not limited to:

    a. Rafi Amergi, husband of decedent;
    b. The Children of Ahuva Amergi;
    c. Dan Davidovic, father of decedent;
    d. Judith Davidovic, mother of decedent;
    e. Eliezer Davidovic, brother of decedent;
    f. Arical Davidovic, brother of decedent;
    g. Sarah Zweig, sister of decedent.

- 8 -

CASE NO. 040225-CIV-SEITZ/BANDSTRA

41. That the AMERGI family has suffered a great loss.

## COUNT – 1 SAPERSTEIN.
## INTERNATIONAL TERRORISM: TORTIOUS TERRORIST ACTS.

42. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

43. Jurisdiction over the subject matter exists through the federal cause of action pursuant to 18 U.S.C. § 2333 (2003), which states that, any national of the United States injured in his person by reason of an act of "international terrorism," may sue therefore in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

44. Additionally the "district courts of the United States shall have exclusive jurisdiction over an action brought under this chapter." 18 U.S.C. § 2338 (2003).

45. This Court may exercise personal jurisdiction over the individual Defendants consistent with the Due Process Clause of the Fifth Amendment.

46. This Court has personal jurisdiction through service of process pursuant to 18 U.S.C. §2334(a) (2003), and Fed.R.Civ.P. 4(k)(1)(D), or in the alternative, pursuant to Fed.R.Civ.P. 4(k)(2) (2003).

47. All of the defendants have minimum contacts with the United States as a whole.

48. Venue is proper in this Court.

49. SAPERSTEIN is a citizen of the United States and Israel.

50. SAPERSTEIN was victimized by an act of "international terrorism" as defined by 18 U.S.C. §2331(1) (2003).

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

51. Defendants' activities involved violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States or of any State.

52. Defendants' activities would be a criminal violation if committed within the jurisdiction of the United States or of any State;

53. Defendants' activities were intended to intimidate and coerce the Israeli civilian population;

54. Defendants' activities were intended to influence the policy of the Israeli government by intimidation or coercion; and

55. Defendants' activities occurred outside the territorial jurisdiction of the United States.

56. Defendants' acts are therefore acts of international terrorism as defined under 18 U.S.C. §2231 and §2333.

57. By reason of tortious terrorist acts SAPERSTEIN suffered severe injury, including: pain and suffering; intentional and negligent infliction of emotional distress; loss of pecuniary support and loss of consortium.

58. Defendants' conduct was willful, extreme and outrageous and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

59. Defendants' conduct proximately csaused Plaintiff to lose his only hand. SAPERSTEIN has suffered an extreme loss in productivity in his work as a journalist, due to Defendants' conduct.

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

60. For the reasons stated above, Defendants are jointly and severally liable to SAPERSTEIN.

**WHEREFORE**, SAPERSTEIN seeks compensatory and punitive damages in excess of 10 Million Dollars, exclusive of interest, costs and attorneys' fees, including all damages caused by the international terrorism.

## COUNT 2 – AMERGI.
## ALIEN'S ACTION FOR TORT: TORTIOUS TERRORIST ACTS

61. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

62. Jurisdiction over the subject matter exists through the federal cause of action pursuant to 28 U.S.C. §1350 (2003); which states, that district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States

63. AMERGI was an Israeli citizen.

64. Defendants PA, PLO, ALKATIV and ARAFAT committed a tort upon AMERGI through their agent KATZIR.

65. Said tort involved human rights abuses plus cruel and inhumane treatment of AMERGI in violation of the *Jus Cogens*, the Law of Nations, and Customary International Law including but not limited to, *the Universal Declaration of Human Rights, the Convention Against Torture and Other, Cruel, Inhuman or Degrading Treatment or Punishment*, and the United States Constitution.

- 11 -

PodhurstOrseck
25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954 463 4346    www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

66. The tortious acts, committed by Defendants, specifically and universally embody conduct that international lawyers have viewed as violating customary international law.

67. Any actor – private or state – may be liable for a violations of a *jus cogens* norm under §1350.

68. Defendants PA, PLO, ARAFAT, PPS, and individual alleged terrorists willfully and/or negligently caused the death of AMERGI by breaching obligations and undertakings which they took upon themselves in the international instruments known collectively as the Oslo Accords and/or applying to them under international customary law and local law, to actively prevent incitement and encouragement of acts of violence against any person by individuals and groups within territory under their control, to denounce and condemn all acts of terror, to apprehend, prosecute and imprison persons involved directly and indirectly in acts of terrorism and to outlaw and dismantle the infrastructure of terrorist organizations within the territories under their control, and generally to conduct themselves in such a manner as not to wantonly, and/or negligently cause or allow the infliction of injuries to persons such as the plaintiffs herein.

69. By reason of their wrongful acts, neglects or defaults, Defendants caused the death of AMERGI, thereby causing pain and suffering; loss of pecuniary support; loss of consortium; emotional distress; loss of parental society and companionship.

-12-

PodhurstOrseck

CASE NO. 040225-CIV-SEITZ/BANDSTRA

70. Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

71. Defendants' conduct was willful, extreme and outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

72. For the reasons stated above, Defendants are jointly and severally liable to AMERGI.

73. The claims for wrongful death, loss of consortium, and intentional and negligent infliction of emotional distress brought by the administrator of the AMERGI estate, pursuant to the Alien's Action for Tort, share a common nucleus of operative facts as claims under the International Terrorism Act, 18 U.S.C. §2338 (2003); 28 U.S.C. §1367 (2003).

74. AMERGI has no adequate, or available, remedies in the place in which the conduct giving rise to this claim occurred.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   www.podhurst.com

CASE NO. 040225-CIV-SEITZ/BANDSTRA

**WHEREFORE**, AMERGI seeks compensatory and punitive damages in excess of 10 Million Dollars, exclusive of interest, costs and attorneys' fees, including all damages caused by the tortious terrorist acts.

DATED this 6th day of February, 2004.

Respectfully submitted,

**PODHURST, ORSECK, P.A.**
**25 West Flagler Street, Suite 800**
**Miami, Florida 33130**
**Telephone: (305) 358-2800**
**Facsimile: (305) 358-2382**

By: _____
ROBERT C. JOSEFSBERG
Fla. Bar No. 040866