UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN

MOSHE SAPERSTEIN, et al.,

      Plaintiffs,

v.

THE PALESTINIAN AUTHORITY;
THE PALESTINE LIBERATION
ORGANIZATION,

      Defendants.

_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING
PLAINTIFF'S NOTICE OF DEPOSITION OF AHMED QUREI**

**INTRODUCTION**

Plaintiff Moshe Saperstein ("plaintiff") respectfully submits this memorandum in opposition to defendants' Motion for Entry of a Protective Order Regarding Plaintiff's Notice of Deposition of Ahmed Qurei. DE 359-360.

As shown below, defendants' motion is completely without merit and should be denied.[1]

_____

[1]    At the October 14, 2009, hearing in this matter, plaintiff requested leave to file a motion to compel in parallel to defendants' motion for a protective order. Magistrate Judge O'Sullivan stated that a motion to compel would be unnecessary but nonetheless granted plaintiff leave to file such a motion. After reviewing defendants' motion, plaintiff agrees that a separate motion to compel would unnecessarily burden the Court, and that the Court can and should deny defendants' motion and thereby require defendants to comply with the notice of deposition.

## RELEVANT FACTUAL AND LEGAL BACKGROUND

**A.  Plaintiff Requires Evidence That the So-Called "Al-Aksa Brigades" is Part and Parcel of Fatah – and Ahmed Qurei Has the Requisite Knowledge**

Plaintiff's action is brought under the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA").  It is well established that a defendant's provision of funds to the organization that carried out the attack in which the plaintiff was harmed, during the period prior to the attack, renders the defendant civilly liable under § 2333 of the ATA (if the defendant knew[2] that the organization was carrying out terrorist attacks) because such conduct violates, *inter alia*, the criminal prohibitions of 18 U.S.C. §§ 2339A and 2339B. *See e.g. Boim v. Holy Land Found.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*); *Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005).[3]

Plaintiff was injured in a terrorist attack carried out by the so-called "Al-Aksa Brigades." Plaintiff maintains that the "Al-Aksa Brigades" is nothing but a *nom de guerre* used by the Fatah (or: "Fateh") faction of the PLO when it carries out terrorist attacks.

Defendants do not deny that they provided funds to Fatah, but they strongly dispute that the "Al-Aksa Brigades" is part and parcel of Fatah:

> [E]ven assuming that Plaintiff could establish that the attack was carried out by the Al Aqsa Martyrs' Brigades, as opposed to being carried out by persons claiming Al Aqsa affiliation but acting on their own, Plaintiff cannot establish that the attack is therefore one carried out by Fatah. **Plaintiff's efforts to equate Fatah with Al Aqsa** – though **essential to his theory of liability** – is untenable … Plaintiff's notion that there is an organized entity known as

---

[2]    Fatah's widespread involvement in terrorism between late 2000 and the date of the attack on the plaintiff was open and notorious, and plaintiff will have no trouble proving that the defendants were well aware of (indeed, intended to support) Fatah's terrorist activities.

[3]    Neither §§ 2339A nor 2339B require that the organization that carried out the attack be designated as a terrorist group. While defendants have previously claimed that § 2339B requires such a designation, the plain language of the provision makes clear that it applies to **either** a designated terrorist organization **or** to any group that "has engaged or engages in terrorist activity ... or ... terrorism." 18 U.S.C. § 2339B(a)(1).

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

the "Al Aqsa Martyr's Brigades" operating under the command and control of Fatah, bears no relationship to the facts.

It is important that the Court understand that the premise of a great deal of Plaintiff's discovery is the unsupportable proposition that Al Aqsa is indistinguishable from Fatah. Only by improperly conflating the two does Plaintiff make relevant the support that the PA or PLO provides to Fatah.

DE 324 at 16-17 (emphasis added).[4]

Thus, as defendants accurately state: "Plaintiff's efforts to equate Fatah with Al Aqsa [are] **essential** to his theory of liability." *Id*. (emphasis added).

In order to prove this "essential" element of his theory of liability, plaintiff requires evidence demonstrating that the "Al-Aksa Brigades" is part of Fatah. Ahmed Qurei has expressly admitted that the "Al-Aksa Brigades" is part of Fatah: on June 21, 2004, the PA's own website published a statement from Ahmed Qurei, who was then the Prime Minister of defendant Palestinian Authority ("PA"), in which Qurei said that "**the al Aqsa martyr brigade is a part of Fateh movement**," that "**the Al-Aqsa Martyrs Brigades, military wing of the Fateh movement will not be dissolved and Fateh will never relinquish its military wing**," and that "**the dispute is ended obviously over whom are the al Aqsa martyr brigade**." Exhibit A.

Accordingly, Ahmed Qurei is obviously a **<u>crucial witness</u>** for the plaintiff.

---

[4]   Plaintiff can indeed prove that the "attack was carried out by the Al Aqsa Martyrs' Brigades, as opposed to being carried out by persons … acting on their own" because one of the two terrorists convicted by an Israeli court of the attack, Nizar Dahliz, was also convicted of membership in the "Al-Aksa Brigades" specifically on the basis of the fact that he carried out the attack **on behalf of** the "Al-Aksa Brigades." Because carrying out the attack for the Al Aksa Brigades was a factual element upon which Dahliz's conviction for membership in the Al Aksa Brigades restwas based, the finding that the attack was carried out on behalf of the Al Aksa Brigades is admissible proof under Federal Rule of Evidence 803(22).

- 3 -

**B.**     **Plaintiff Requires Evidence Regarding the Use Made by Fatah of the Funds Provided by Defendants – and Ahmed Qurei Has the Requisite Knowledge**

In order to ensure that he can prove causation in this case, plaintiff requires evidence regarding (a) whether any of the funds provided by defendants to Fatah reached the specific perpetrators of the attack (b) whether and to what extent those funds were used by Fatah for its "Al-Aksa Brigades" activities (c) what percentage of the overall Fatah budget the funding provided by defendants constituted in the years prior to the attack and (d) what percentage of the overall Fatah budget Fatah applied to its "Al-Aksa Brigades" activities during that period.

Plaintiff requires this information because the issue of causation under ATA § 2333 has not been settled in this Circuit.

Courts in other circuits that have considered this question have unanimously held that, because money is fungible, an ATA plaintiff need only prove that the defendant provided funds **to the organization** that carried out the attack that harmed the plaintiff, and does **not** need to show that the specific funds provided by the defendant were used for that attack. *See Boim*, 549 F.3d at 698 ("[I]f you give money to an organization that you know to be engaged in terrorism, the fact that you earmark it for the organization's nonterrorist activities does not get you off the liability hook [due to] the fungibility of money. If Hamas budgets $2 million for terrorism and $2 million for social services and receives a donation of $100,000 for those services, there is nothing to prevent its using that money for them while at the same time taking $100,000 out of its social services 'account' and depositing it in its terrorism 'account.'"); *Goldberg v. UBS AG*, --- F.Supp.2d ----, 2009 WL 3077118 at *15 (E.D.N.Y. 2009) ("Congress did not intend to limit recovery to those plaintiffs who could show that the *very dollars* sent to a terrorist organization were used to purchase the implements of violence that caused harm to the plaintiff.") (emphasis in original); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 631-632 (E.D.N.Y. 2006) (same, noting fungibility of money).

However, the courts have split regarding whether a § 2333 plaintiff satisfies causation merely by showing that the defendant provided material support to the organization that carried out the attack, or whether some showing of causation between the provision of support and the attack must be made. The majority of the *en banc* panel in *Boim* held that § 2333 provides for

- 4 -

strict civil liability, and that a § 2333 defendant will be liable if it provided material support to an organization that it knew commits terrorism. *Boim*, 549 F.3d at 687-700. The dissenting judges in *Boim* disagreed, and opined that a § 2333 plaintiff must show some causal link between the provision of support and the attack – even if indirect. *Id*. at 724 (Plaintiff must show causation, but to do so plaintiff need only show that funds provided by defendant "indirectly supported" terrorism, and since "money is fungible ... the receipt of an amount that would have been sufficient to finance the [terrorist attack] would be enough to show that the 'material assistance' of giving money caused the terrorist act."). *See also id*. at 705-726.

Plaintiff's position is that the unanimous cases holding that because money is fungible he need only show that the defendants provided funds to the organization that carried out the attack – and not that the specific funds provided by the defendants were used to carry out the attack – are correct and should be adopted by this Court.

Plaintiff further maintains that the holding of the *Boim* majority – *i.e.,* that § 2333 is a strict liability statute and that he can show causation merely by proving that the defendants provided funds to the organization that carried out the attack – is also correct and should be followed by this Court.

But because this Court is not bound by any of these precedents the defendants are free to argue that the mere provision of funds to Fatah cannot render defendants liable under the ATA, and that in order to establish liability plaintiff must show that the specific funds provided by defendants to Fatah were used to carry out the attack and/or were the direct cause of the attack.

Indeed, defendants have **already** begun making just such arguments. At the hearing in this matter on September 2, 2009, defendants argued that discovery should be limited to whether they provided material support to the individual perpetrators of the attack, rather than to Fatah as a whole. Tr. 9/2/09 at 28:19-29:18. This argument runs directly against the holding of the unanimous cases cited above, that, because money is fungible, provision of funds to the organization that committed the attack is sufficient to create liability under § 2333.

Likewise, defendants have argued to this Court that "[t]o be subject to civil liability under the ATA, the defendant must engage in conduct causally related to the attack" and that mere provision of funds to Fatah is insufficient to give rise to liability. DE 325 at 17-19. This

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

argument contradicts the holding of the *Boim* majority that § 2333 is a strict liability statute, and that provision of funds to the guilty organization establishes liability under § 2333, with no need for a showing of any link between the provision of funds and the attack.

In the absence of any controlling precedent in this Circuit plaintiff has no way of knowing how this Court (and the Eleventh Circuit) will ultimately rule on these questions of law.

Basic prudence therefore demands that the plaintiff litigate this case taking into account the possibility that this Court, or the Eleventh Circuit, will reject the precedents cited above and adopt entirely different rules of causation for § 2333 cases.

Accordingly, in order to make certain that he can prove causation under any standard that this Court and the Eleventh Circuit might adopt, the plaintiff requires information regarding:

a)       Whether any of the funds provided by defendants to Fatah reached the specific perpetrators of the attack. Obviously, if the specific monies provided by defendants were used to fund the activities of the actual perpetrators, causation exists under any standard.

b)       Whether and to what extent the funds provided by defendants to Fatah were used by Fatah for its "Al-Aksa Brigades" activities. This information is important because even if the funds provided by defendants cannot be traced to the individual perpetrators, plaintiff will have a strong case for causation if those funds went to Fatah's Al-Aksa activities in general. In *Boim*, the defendants disputed liability on the grounds that they funded Hamas' charitable work, not its terrorist activities. While the *Boim* court rejected that argument as a matter of law, the instant defendants are also likely to argue that they funded Fatah's legitimate political activities, not its terrorist operations, and that the holding in *Boim* is erroneous. Thus, by obtaining proof that the funds provided by defendants went to Fatah's terrorist activities, plaintiff can show causation even if this Court and the Eleventh Circuit decline to follow *Boim*.

c)       What percentage of the Fatah budget the funding provided by defendants constituted in the years prior to the attack. This information is necessary to show the extent to which defendants contributed to Fatah's operations. The greater the percentage of Fatah's budget the funds provided by defendants constituted, the stronger plaintiff's causation argument.

d)       What percentage of the overall Fatah budget Fatah applied to its "Al-Aksa Brigades" activities during that period. This information is related to that described in (c). For

- 6 -

example, if defendants supplied 50% of the Fatah budget and Fatah used 20% of its budget for "Al-Aksa Brigades" activities in the years prior to the attack, defendants' contribution to Al-Aksa Brigades operations was substantial, and plaintiff would have a very solid basis for causation.

Clearly, the information above can only be obtained by deposing a person with significant personal knowledge about the internal financial operations of Fatah.

Ahmed Qurei is unquestionably just such a person. On April 1, 2009, plaintiff took the deposition of Hussein al-Sheikh, who serves today as the PA's Minister of Civil Affairs. Al-Sheikh is also veteran activist and leader in Fatah. *See* Tr. 4/1/09 (Exhibit B) at 37-39; 68-69; 74-75; 77-79; 96-99; 127. In his deposition, Al-Sheikh testified that, since 1989, Ahmed Qurei has been the person "in charge of supervising Fatah's money." *Id*. at 133-135.

Obviously, as the person "in charge of supervising Fatah's money" during relevant period (the years leading up to the attack), Mr. Qurei is an ideal witness to provide the information required by plaintiff, described above.

Moreover, Ahmed Qurei not only "supervised" Fatah's money during the relevant period, he personally held and managed Fatah funds in a bank account listed **in his own name**. This fact came to light in March 2008, when the PA representative to Romania, Adli Sadek, accused Qurei of depositing million of dollars of PLO funds into his private bank account. *See* Exhibit C.

In response, Qurei issued a statement (published by the respected Palestinian news agency Ma'an) confirming that he had indeed made the transfer from a PLO account into an account in his own name, but explained that the account in his name is actually "**the account of the Palestinian National Liberation Movement (Fatah) in the Arab Bank in Jordan. The account is in the names of different persons known to the movement and the decision of the leadership since the mid-eighties and the start of the Fatah movement was to register the account in the names of different persons for security reasons**." *See* Exhibit D.

Thus, between the "mid-eighties" and at least 2008, Qurei held Fatah funds in an account listed in his own name for "security reasons."

Clearly, then, Qurei is intimately familiar with the internal world of Fatah finances and, for this reason, too, is a critical witness in this case.

- 7 -

## ARGUMENT

Despite – or more likely because of – Qurei's importance as a witness, the defendants have moved for a protective order blocking his deposition on various grounds.

As this Court has explained:

> Due to the broad scope of discovery, it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition. Courts may, nevertheless, grant a protective order prohibiting the taking of a deposition when it believes that the information sought is wholly irrelevant to the issues or prospective relief. The normal practice of most courts, however, is to deny motions that thwart a deposition. **An order barring a litigant from taking a deposition is most extraordinary relief**. Courts rarely grant a protective order which totally prohibits a deposition, unless extraordinary circumstances are present.

*Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, 1999 U.S. Dist. LEXIS 16939 at * 11 (S.D. Fla. 1999) (citations and quotations omitted) (emphasis added).

As shown below, defendants' grounds for a protective order are all meritless.

**A.      Rule 30 Authorizes the Court to Require an Organizational Party to Produce Its Officers, Directors and Managing Agents for Depositions**

Defendants argue at length that the Federal Rules of Civil Procedure do not permit a court to order an organizational defendant to produce for a deposition an officer, director or managing specified by another party, and that therefore the plaintiff can obtain the defendants' deposition only through Rule 30(b)(6). DE 360 at 3-9.

This argument can be swiftly disposed of since it flies in the face of decades of decisional law and authority, as well as the Advisory Committee notes to Rule 30(b)(6). *See, e.g., Atl. Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577, 579 (1st Cir. 1975) ("[T]he Advisory Committee notes accompanying the amendment to Rule 30 which created the 30(b)(6) procedure make it clear that the device 'supplements the existing practice whereby the examining party designates the corporate official to be deposed.' 48 F.R.D. 487, 515 (1970 Amendments)"); *Karakis v. Foreva Jens Inc.*, 2009 WL 113456 at *1 (S.D.Fla. 2009) ("[T]he party seeking a

- 8 -

corporate deposition may identify a specific officer, director, or managing agent to be deposed and notice that individual under Federal Rule of Civil Procedure 30(b)(1).”); *Calixto v. Watson Bowman Acme Corp*., 2008 WL 4487679 at *2 (S.D.Fla. 2008) (“Under Rule 30(b)(1), any person can be deposed … a subpoena need not be issued if the person to be deposed is a party, officer, director, or managing agent of a party.”); *U.S. v. Baby-Tenda Corp*., 2007 WL 2590427 at * 1 (W.D.Mo. 2007) (“Defendant’s position that this deposition was not predicated on Rule 30(b)(6) is a red herring. Rule 30(b)(6) says a party ‘may’ depose an corporation by specifying the topics for the deposition and leaving it to the corporation to designate the appropriate officer(s) or representative(s) to address those topics on its behalf. However, this is not the only way to depose a corporation. If the particular company representative is known, that representative may be named.”); 8A Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d § 2107 (“Rule 30(a) provides that the attendance of witnesses at the taking of a deposition may be compelled by subpoena as provided in Rule 45. Though the rules do not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party.”); 8 Wright & Miller, *Federal Practice and Procedure* § 2103 (corporation can be required to produce “an officer, director, or managing agent”).

Clearly, then, defendants’ argument here is totally baseless. Defendants nonetheless seek to avoid this conclusion on several meritless grounds:

Defendants cite to *Stone v. Morton Int’l*, 170 F.R.D. 498 (D. Utah 1997) as purported support for their position. But *Stone* did nothing more than point out (as did Wright & Miller years ago, *id*. at § 2107) that the Federal Rules do not **explicitly** state that an organizational defendant is obligated to produce a director, officer or managing agent pursuant to notice. *Id*. at 503. Despite this lack of explicit language, *Stone* concluded that “[t]he line of cases, using various references, supports the conclusion that a party can, by notice, require a corporation to produce a director, officer or managing agent for deposition.” *Id*. at 503-504.

*Stone* therefore supports the plaintiff, not the defendants.

Defendants also attempt to distinguish the instant case on the grounds that defendants did not come into this Court seeking affirmative relief, and therefore cannot be compelled to produce their officers, directors and managing agents for a deposition. This argument should rejected

- 9 -

because (a) there is no authority whatsoever to support it (b) defendants were found to be subject to the personal jurisdiction of this Court (DE 61 at 12-13) and (c) defendants were required to accede to the jurisdiction of this Court as a condition of vacating their default (DE 209 at 32).

Defendants also argue, citing to *Stone*, that Mr. Qurei's deposition is inappropriate because he resides far from this Court. Aside from the fact that **all** of defendants' officers reside far from this Court, in the cover letter accompanying the notice of deposition plaintiff expressly expressed his willingness to hold the deposition in another venue. Exhibit E. To remove all doubt on this point, plaintiff hereby agrees to depose Mr. Qurei in a mutually-agreed upon location in East Jerusalem, which is a 30-minute drive from Mr. Qurei's home in Ramallah.

Defendants also assert that Mr. Qurei is not a "particularly knowledgeable person about matters at issue in the litigation." DE 360 at 6.

In fact, as shown *supra*, Mr. Qurei is an extremely knowledgeable witness.

Finally, defendants assert that "Plaintiff's entire effort to depose Mr. Qurei is now geared, not toward obtaining proper discovery, but toward obtaining a discovery sanction against Defendants." DE 360 at 6. This argument is both galling and a total fiction. Months ago, in his responses to defendants' interrogatories, served on April 23, 2009, plaintiff listed Ahmed Qurei in **second place** on the list of persons with knowledge relevant to this case. Exhibit F. Furthermore, a copy of Mr. Qurei's June 21, 2004 admission that the Al-Aksa Brigades are part of Fatah was produced by plaintiff to defendants on April 24, 2009 as Bates #1. Exhibit G. Moreover, plaintiff had no reason to believe when he served his deposition notice in August that (purportedly) Mr. Qurei will refuse to appear – a claim first made by defendants in October.

Defendants are casting baseless aspersions on plaintiff's motives solely to distract the Court from their own contumacious refusal to produce Mr. Qurei.

**B.      Ahmed Qurei Is an Officer and/or Director of the PLO**

Defendants next assert that (a) because the PLO is an unincorporated association it *per se* cannot have officers or directors (b) that therefore the PLO cannot be required to produce Ahmed Qurei unless he is a "managing agent" of the PLO and (c) that Qurei is not a "managing agent" of the PLO because his refusal to appear demonstrates that he cannot be relied upon to give testimony on behalf of the PLO or identify with the interests of the PLO. DE 360 at 9-11.

- 10 -

Before turning to the "merits" of this argument, plaintiff would respectfully alert the Court to the ramifications thereof. The defendants maintain that **both** the PA and the PLO are unincorporated associations. *See* DE 291 at 11 n.2. If, as defendants claim, they are both unincorporated associations and unincorporated associations cannot have officers or directors but only managing agents, then defendants can thwart the deposition of **any** of their personnel in this case by the simple expedient of informing the Court that the person requested is refusing to appear and therefore is not a "managing agent." Such a result – which is what defendants are fishing for by making this argument – would eliminate plaintiff's ability to litigate this case.

In any event, defendants' claim that an unincorporated association cannot have officers or directors is not only meritless but frivolous, and is founded wholly on their conclusory *ipse dixit* statement that: "Because the PLO is not a corporation, Mr. Qurei is obviously neither an 'officer' nor 'director' of the PLO." DE 360 at 9.

Defendants do not explain why this is "obviously" so, because they cannot. On the contrary, there is no question that unincorporated associations can have officers and directors. Indeed, in *United States. v. Fleischman*, 339 U.S. 349 (1950) the Supreme Court held a subpoena may be enforced against officers of an unincorporated association exactly as against officers of a corporation. *Id*. at 358 ("Nor is a distinction to be drawn on the ground that a corporation was there involved while the Joint Anti-Fascist Refugee Committee is an unincorporated association … a subpoena directed to an unincorporated association and its officers is equally valid. If the legislative committee had a right to demand the records, the directing officers of the association are quite as responsible for their production as if they were corporate officers.").

Moreover, the **Federal Rules themselves** recognize that unincorporated associations have officers. *See* Rule 4(h)(1)(B) (providing for service of process on an "officer" of an unincorporated association). Likewise, the case law clearly recognizes that, exactly like a corporation, unincorporated associations have officers and directors. *See e.g. Murray v. Sevier*, 993 F.Supp.1394, 1404 (M.D.Ala. 1997) (Responsibility of directors of an unincorporated association is "analogous to the responsibility of corporate directors and officers."); *Merchant v. Communication Workers of Am.*, 1993 WL 475480 at *3 (E.D. La. 1993) ("The justification for adopting the publication exception for communications between officers of a corporation appears

- 11 -

to the Court to apply with equal force to communications between officers of an unincorporated association."); *Rock Drilling v. Mason*, 217 F.2d 687, 691 (2nd Cir. 1954) ("[I]t is quite common, as in New York, to find code or other statutory provisions permitting actions to be maintained by or against the president or treasurer or other officers of an unincorporated association."); *United States  v. Linen Serv. Council of N.J.*, 141 F. Supp. 511, 512 (D.N.J. 1956) ("[A]n officer of an unincorporated association such as a labor union may not refuse to produce books and records of the union on the ground that they may tend to incriminate him."); *Gulickson v. Forest*, 290 F. Supp. 457, 468 (E.D.N.Y. 1968) ("The general rule is that officers of a corporation are not liable for inducing it to breach a contract ... This reasoning is applicable to the officers of an unincorporated association"); *United States v. Int'l Fur Workers Union*, 100 F.2d 541, 547 (2nd Cir. 1938) ("[A]n officer of an unincorporated association, no more than an officer of a corporation, is not authorized merely by virtue of his office to make his principal a party to an unlawful conspiracy.").

Nor is there any question that Mr. Qurei is an officer and/or director of the PLO by virtue of his position as a member of the Executive Committee of the PLO.

The constitution of the PLO provides that:

> The Executive Committee is the **highest executive authority** of the Organization. **It shall remain in permanent session, its members devoting themselves exclusively to their work**. It **shall be responsible for executing** the policy, programs and planning approved by the National Assembly, to which it shall be responsible, collectively and individually.
>
> The Executive Committee shall assume responsibility for:
>
> (a) Representing the Palestinian people.
> (b) Supervising the Organization's subsidiary bodies.
> (c) **Issuing regulations and instructions, and taking decisions on the Organization's activities**, provided these are not incompatible with the Charter or the Constitution.
> (d) Implementing the Organization's financial policy and drafting its budget. **In General, the Executive Committee shall assume all the responsibilities of the Liberation**

- 12 -

**Organization**, in accordance with the general policies and resolutions adopted by the National Assembly.

Exhibit H at ¶¶ 15-16 (emphasis added).

Thus, Ahmed Qurei is clearly an officer and/or director of the PLO, whom the PLO can and should be directed to produce for a deposition.

**C.      Under the Federal Rules a Witness' Knowledge Is Indivisible and the Source of His Knowledge Is Irrelevant**

Defendants next argue that even if the PLO can be compelled to produce Mr. Qurei because he is an officer and/or director of the PLO he can be questioned only about knowledge he obtained in that capacity, and since he joined the Executive Committee only recently he has no knowledge in his current capacity relevant to the circumstances of this case. DE 360 at 11-13.

Simply put, the defendants are arguing that a deponent cannot be questioned regarding knowledge acquired by him outside the specific capacity in which he is being deposed.

In fact, however, it is long and well established that a deponent may be questioned about ***any*** knowledge he has, irrespective of origin, including knowledge obtained outside of the capacity in which he is being deposed. *See, e.g., Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, 1999 U.S. Dist. LEXIS 16939 at * 11 (S.D. Fla. 1999) ("Plaintiff may ask Modist questions related to his corporate capacity during his deposition in his individual capacity."); *LendingTree, Inc. v. LowerMyBills, Inc.*, 2006 WL 2443685 at *2 n. 3 (W.D.N.C. 2006) ("[T]he United States District Court for the Southern District of Florida has held that a party may conduct an individual deposition of a corporate witness.") (citing *Midland*); *King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995), *aff'd* 213 F.3d 646 (11th Cir. 2000) (permitting questioning of deponent regarding subjects not included in Rule 30(b)(6) notice and holding that, "[s]ince there is no specific limitation of what can be asked at deposition, the general deposition standards govern ...This Court sees no harm in allowing all relevant questions to be asked at a Rule 30(b)(6) deposition or any incentive for an examining party to somehow abuse this process."); *Todd v. Precision Boilers*, 2008 WL 4722338 at *3 (W.D. La. 2008) (holding that Rule 30(b)(6) witnesses "may be asked questions within their personal knowledge as well as within the corporation's knowledge."); *Rainbow Popcorn Co. v. Intergrain Specialty*

- 13 -

*Prods.*, 2008 WL 2184116 at * 12 (D. Neb. 2008) (Rejecting claim that witness being deposed in his individual capacity could not be required to answer questions regarding corporate matters as "contrary to the purpose of the federal discovery rules" and holding that "Although Walthall was being deposed in his individual capacity, he had personal knowledge of the operations and transactions of ALMCO and Intergrain … Asking deposition questions aimed at discovering that information was not improper."); *Six West Retail Acquisition v. Sony Theatre Mgmt.*, 203 F.R.D. 98, 106-107 (S.D.N.Y. 2001) (Finding deposition of senior executive of Sony "appropriate" because he had knowledge of matters at issue in the case, despite the fact that that knowledge was obtained before executive assumed his position at Sony).

Similarly, in *Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D.N.Y. 2006) the court ordered Naguib Sawiris, a U.S. citizen residing abroad, to appear for a deposition pursuant to 28 U.S.C. § 1783 to testify regarding the jurisdictional contacts of a corporation of which he was chairman. The court specified that the deponent would be required to testify in his individual capacity only, and would not be required to produce corporate documents. *Id*. at 333, 335.

A dispute then erupted between the parties as to whether Mr. Sawiris could be questioned about information acquired in his corporate capacity. The court ruled as follows:

> I cannot require [the deponent] to create an arbitrary wall **between what he knows personally and what he knows by virtue of his corporate employment**. He may therefore be questioned about matters within his personal knowledge, **without distinguishing the source of that personal knowledge**.

Exhibit I (emphasis added).

The cases above clearly demonstrate that a deponent may be questioned about any matter within his knowledge, irrespective of the source of that knowledge, and that defendants' arguments to the contrary are meritless.

Furthermore, there are several unique circumstances here that strongly support requiring the PLO to produce Mr. Qurei:

- 14 -

*First*, Qurei's admission that the Al-Aksa Brigades are part of Fatah was not made in his capacity as a private person but during an interview given **in his capacity as the Prime Minister of the PA**. *See* Exhibit A.

The fact that Qurei had the knowledge underlying this admission while serving as an officer of the PA, which is a co-defendant in this case, is reason enough to compel the deposition. Indeed, adopting defendants' position would lead to the absurd result that the plaintiff cannot compel the PA to produce Qurei for a deposition in his capacity as Prime Minister, because he no longer holds that position and cannot compel the PLO to produce him because he was not an officer of the PLO at the time. The Court should not countenance such a ludicrous state of affairs.

*Second*, Qurei's handling of Fatah's finances directly involved the PLO, since he was transferring funds from a PLO account to a Fatah account. *See* Exhibit D. Thus, even if Qurei's control over the PLO's bank account did not formally render him an officer or director of the PLO at that time, the fact that the activities at issue involved the PLO and its finances undermines completely defendants' attempt to treat Qurei's activities prior to his appointment to the Executive Committee as private-capacity conduct unrelated to the PLO.

*Third*, Fatah is not some foreign entity unrelated to the PLO. On the contrary, Fatah is the main constituent faction of the PLO and, as the PLO's own website explains, since 1969 Fatah "has constituted the backbone of the PLO and has effectively led the political movement until this day." Exhibit J.[5] Thus, Qurei's activities as chief of Fatah finances were closely and directly related to the PLO itself. The facts of this case are therefore similar to those in *Six West Retail Acquisition*, 203 F.R.D. at 106-107, wherein a senior executive of Sony was founded to be an

---

[5]       Available at www.un.int/palestine/PLOstructureI.shtml.

- 15 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

appropriate deponent because he had knowledge of matters at issue which he acquired while serving as an officer for a Sony subsidiary.

*Fourth*, defendants sought and received *vacatur* of their default in this case on the basis of their representation that if default were vacated they would "participate fully, in a cooperative and complete manner" with discovery. DE 175 at 23. *See also id.* at Exhibit C, ¶ 13 ("Defendants will participate fully … in a cooperative manner, including complete participation in the discovery process."). Defendants should be held to this representation.

**D.    There Are No Grounds to Delay the Deposition**

Defendants assert in the alternative on several grounds that Qurei's deposition should be delayed pending the completion of other discovery. DE 360 at 13-16. Defendants' argument is that because Qurei is an extremely senior official of the PLO (a claim which of course contradicts their claim that he is not an official of the PLO at all) plaintiff should be required to exhaust other forms of discovery, including taking the depositions of Rule 30(b)(6) witnesses and awaiting defendants' response to his first interrogatory, before deposing Qurei.

This argument fails for multiple reasons:

*First*, Qurei is not a chief executive or "apex" officer of the PLO, but rather "one member of an 18 member Executive Committee with no more authority than any other member," as the defendants themselves have explained. DE 360 at 10.

Accordingly, the cases cited by defendants regarding apex witnesses are inapposite.

*Second*, even assuming that Qurei was an "apex" deponent, his testimony should be permitted because he has unique knowledge and (as defendants' own citations confirm) depositions of apex witnesses with unique knowledge are permitted. Not only was Qurei the person in charge of Fatah's finances during the relevant time, he personally holds Fatah funds in an account in his name, as shown above.

- 16 -

Furthermore, he personally admitted that the "Al-Aksa Brigades" are part of Fatah. Clearly, then, he is a witness with unique knowledge.

*Third*, the defendants have not identified any other official of the PA or PLO with any knowledge of the internal details of Fatah's finances – much less with Qurei's scope of knowledge – because none exists. Defendants' demand that plaintiff first take Rule 30(b)(6) depositions is thus frivolous.

*Fourth*, there is no good reason for the plaintiff to waste his limited resources taking Rule 30(b)(6) depositions, when Qurei has all the necessary knowledge.

*Fifth*, defendants' document production and responses to plaintiff's first interrogatory will necessarily relate only to defendants' transfers of funds to Fatah, and not to the use Fatah made of the funds **once they were received** (i.e. whether and to what extent the funds reached the specific perpetrators and/or were used for Al-Aksa activities) nor to the details of Fatah's budget which (as discussed *supra*) are relevant to causation.

*Sixth*, defendants' document production and responses to plaintiff's first interrogatory have absolutely nothing to do with the question of whether Al-Aksa is part of Fatah.

*Seventh*, the **only** witness who can confirm Qurei's admission regarding Al-Aksa and Fatah – which plaintiff intends to assert binds the defendants – is Qurei himself.

It is therefore absurd to suggest, as defendants do, that plaintiff be prevented from questioning Qurei himself about his admission.

Defendants attempt to wriggle of this issue by claiming that because Qurei's admission was made in 2004, a couple years after the attack, it is irrelevant as a matter of law to this case. DE 360 at 13-14. This argument is of course frivolous. Nothing in Qurei's admission indicates that his characterization of the Al-Aksa Brigades was limited solely to the period in which he happened to make it (i.e. June 2004) rather than the 2000-2002 period.

- 17 -

*Eighth*, as discussed above, defendants vacated their default on the basis of a representation that they would cooperate fully with discovery. Defendants' attempt to stall Qurei's deposition flies in the face of that representation and so should be rejected by the Court.

In sum, there are no grounds to delay the deposition.

**E.    Qurei's Refusal to Appear Is Not Grounds to Excuse His Appearance**

Finally, defendants make the astounding argument that they should not be required to produce Qurei because he will not appear.

The Court should reject this argument for several reasons:

*First*, as an initial matter, there is no real evidence that Qurei will not appear. The basis of this claim is counsel's report which he heard from another PLO official, not Qurei himself. It is perfectly possible that defendants are simply playing chicken with the Court.

*Second*, if the Court empowers defendants to block depositions by reporting that their officers refuse to appear, defendants will never produce any salient witnesses and plaintiff's case will be effectively extinguished.

*Third*, this argument should be rejected out of hand in light of defendants' representation that they would cooperate fully with discovery if default were vacated.

*Fourth*, Qurei is defendants' officer, and if they cannot produce him the defendants, not the plaintiff, should bear the consequences.

*Fifth*, the cases cited by the defendants relate to the appropriate sanction for failure to produce Qurei. If and when Qurei really fails to appear (which remains to be seen) and plaintiff seeks sanctions, defendants can present these arguments.

**WHEREFORE**, defendants' motion should be denied.

Dated: October 28, 2009                                    Respectfully submitted,

**JAROSLAWICZ LAW OFFICES**

- 18 -

By: s/: Isaac M. Jaroslawicz
Isaac M. Jaroslawicz, Esq.
Florida Bar No. 979510
E-mail address: Isaac@MyLawyerIsaac.com
1177 Kane Concourse, #222
Bay Harbor Islands, Florida 33154
Telephone: 305.398.7739
Facsimile: 786.206.3575

Attorneys for Plaintiff Moshe Saperstein,

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/: Isaac M. Jaroslawicz
Isaac M. Jaroslawicz, Esq.
Florida Bar No. 979510
E-mail address: Isaac@MyLawyerIsaac.com
**JAROSLAWICZ LAW OFFICES**
1177 Kane Concourse, #222
Bay Harbor Islands, Florida 33154
Telephone: 305.398.7739
Facsimile: 786.206.3575

- 19 -

### SERVICE LIST

**Saperstein v. The Palestinian Authority**
**CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN**
**United States District Court, Southern District of Florida**

**Ramsey Clark, Esq.**
**Lawrence W. Schilling, Esq.**
Ramsey Clark & Lawrence W. Schilling
37 W 12th Street, Suite 2B
New York, NY 10011
Tel: 212-989-6613; Fax: 212-979-1583
*Attorneys for Defendants*

**Mark J. Rochon, Esq.**
Email: mrochon@milchev.com
**Richard A. Hibey, Esq.**
Email: rhibey@milchev.com
**Timothy P. O'Toole, Esq.**
Email: totoole@milchev.com
**Lamia R. Matta, Esq.**
Email: lmatta@milchev.com
**Charles F.B. McAleer Jr., Esq.**
Email: cmcaleer@milchev.com
**Brian Hill, Esq.**
Email: bhill@milchev.com
Miller & Chevalier Chartered
655 15th Street NW, Suite 900
Washington, DC 20005-6701
Tel: 202-626-5800; Fax: 202-626-5801
*Attorneys for Defendants*

**Gary A. Woodfield, Esq.**
Edwards Angell Palmer & Dodge LLP
1 North Clematis Street, Suite 400
West Palm Beach, FL 33401-4309
Tel: 561-833-7700; Fax: 561-655-8719
Email: gwoodfield@eapdlaw.com
*Attorneys for Defendants*

- 20 -