**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 04-20225-CIV-SEITZ/O'SULLIVAN**

| | |
|---|---|
| MOSHE SAPERSTEIN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE PALESTINIAN AUTHORITY, *et al.*, | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING
PLAINTIFF'S NOTICE OF DEPOSITION OF AHMED QUREI**

Plaintiff's Opposition highlights the extraordinary nature of the relief sought here. Plaintiff seeks to have the Court order the PLO, upon pain of discovery sanctions, to produce for deposition in Jerusalem an individual, whom Plaintiff has not demonstrated to be an officer or director of the PLO, and who has already refused the PLO's express direction to appear, so Plaintiff may examine him exclusively about knowledge he obtained his capacity as a former member of the Central Committee of Fatah, which is not a party to this action. No case cited by Plaintiff has awarded such extraordinary relief, and this Court should not do so here.

**I.     THE COURT SHOULD NOT REQUIRE THE PLO TO PRODUCE MR. QUREI FOR DEPOSITION BASED ON A RULE 30(B)(1) NOTICE**

   **A.     The PLO is Not Legally Required to Produce Mr. Qurei**

Rule 30 does not require an organizational party to automatically produce any named officer, director or managing agent in response to a deposition notice issued by an opposing party. *See* Dkt. #360 ("Mem") Part I.A. Plaintiff's Opposition concedes this point. Dkt. # 364 ("Opp.") at 9 ("the Federal Rules do not **explicitly** state that an organizational defendant is obligated to produce a director, officer or managing agent pursuant to notice"). Thus, the initial issue is whether, independently of the text of Rule 30, the Court has the authority to order the PLO to produce an officer or director for deposition.

Plaintiff asserts that Defendants' argument that the Court lacks such authority "is totally baseless" and "flies in the face of decades of decisional law and authority, as well as the Advisory Committee notes to Rule 30(b)(6)." Opp. at 8, 9. However, as our opening brief demonstrated, *Stone v. Morton Int'l*, 170 F.R.D. 498, 500-503 (D. Utah 1997), the only comprehensive analysis of this issue cited by either party, explains why the "decisional law" relied upon by Plaintiff does not require the relief sought here. *Stone*

also analyzed the "authority" cited by Plaintiff from the Wright & Miller treatise, Opp. at 9, and concluded that it "provides little additional support for the [noticing party's] claim" because "[n]o case is cited . . . directly supporting an obligation to produce." 170 F.R.D. at 502. *Stone* likewise considered the Advisory Committee note cited by Plaintiff, Opp. at 8, and concluded that "neither Rule 30(b)(1) nor 30(b)(6) address the obligation of a corporate party to produce the corporate officer." 170 F.R.D. at 500. Based on that extensive analysis, the *Stone* court declined to order a corporate defendant to produce an officer who was located overseas for deposition in response to a notice. *Id.* at 504. The Court should reach the same result here.

As we discussed in our opening brief, the cases where courts have required organizations to produce individuals pursuant to notice are premised on factual situations where: (1) the organization seeks affirmative relief from the court and can thus be required to produce individuals who are located outside the jurisdiction, (2) the individual possesses the organization's relevant knowledge, and/or (3) the individual agrees to appear at the organization's request. Mem. at 8-13. The cases cited in Plaintiff's opposition at 8-9 each contain one or more of these factual predicates, none of which are present here. *Atlantic Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577, 579 & n. 2 (1st Cir. 1975) affirmed an order sanctioning a corporate plaintiff for failing to produce its President who "would almost certainly qualify as a managing agent," but noted that "it would be relevant if the corporation had demonstrated that . . . the corporation had no effective way of encouraging or compelling his appearance." *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 U.S. Dist. LEXIS 6356, at *12 (S. D. Fla. Jan. 19, 2009) denied a motion to compel the noticed deposition of two "co-trustees" of the defendant Trust because "Plaintiff has failed to demonstrate that either" was controlled by the Trust as "a managing agent." *Calixto v. Watson*, No. 07-60077-CIV, 2008 WL 4487679, at *3 (S. D. Fla. Sept. 29, 2008) ordered the deposition of a "managing agent" who held the corporation's relevant knowledge because he "was present at the negotiations of the Agreement that gave rise to this suit."[1] Here, the PLO is not seeking affirmative relief from this Court, Mr. Qurei possesses no relevant "PLO knowledge" as a two-month-old member of the PLO Executive Committee, and Mr. Qurei has refused to appear for a deposition.

### B.   Mr. Qurei is Not an Officer or Director of the PLO

We also demonstrated in our opening brief that Plaintiff had not met his burden of proving that Mr. Qurei is an officer, director or managing agent of the PLO. Mem. at 9-11. Specifically, we demonstrated that: (1) because the PLO is an unincorporated association which has no titular officers or

---

[1] A fourth case cited by Plaintiff, *United State v. Baby Tenda Corp.*, 2007 WL 2590427, at *1 (W. D. Mo. Aug. 27, 2007), does not even involve an effort to compel a deposition by notice.

directors, Mr. Qurei is not, *ipso facto*, an "officer" or "director" for purposes of Rule 30; and (2) the case law from this jurisdiction holds that, where, as here, an organization lacks titular officers and directors, its obligation to produce individuals on notice must be analyzed by determining whether the individuals at issue are managing agents. Mem. at 9 (citing *Karakis*, 2009 U.S. Dist. LEXIS 6356, at *11-12 (analyzing whether "co-trustees" were "managing agents")). Plaintiff's Opposition concedes that Mr. Qurei is not a managing agent, Opp. at 10-13, and on that basis alone, Defendants' motion should be granted.

       Plaintiff contends, however, that "Mr. Qurei is an officer and/or director of the PLO." Opp. at 12. This is a puzzling claim because the portions of the PLO constitution quoted by Plaintiff, *id.* at 12-13, confirm that Executive Committee membership makes Mr. Qurei neither an "officer" nor "director" since the PLO has no such positions. The Executive Committee serves as the administrative organization of the PLO with responsibility to conduct its business between sessions of the Palestine National Council. Exhibit 1 at ¶ 3. Plaintiff cites cases which he claims demonstrate that "unincorporated associations can have officers and directors." Opp. at 11-12. While unincorporated associations may, as a factual matter, choose to denominate certain persons within those associations as "officers or directors," the PLO has not done so; and none of the cases cited by Plaintiff support the conclusion that Mr. Qurei is an "officer" or "director" whom the PLO is required to produce in response to a deposition notice. This is very much the case when the PLO's organizational documents confer neither title upon him. Indeed, the cases cited by Plaintiff on this issue do not involve Rule 30 at all, but rather deal with subpoenas, document production or other legal obligations that may be imposed on an organization's officers and directors, a far cry from creating a basis for Mr. Qurei's deposition.

       While the PLO does not have titled "officers" and "directors," we acknowledge that there are positions within the organization that may be analogous to such corporate offices. For example, the PLO Secretary General holds a position that could be analogized to a corporate "officer." *See* Ex. 1 ¶ 4. Mr. Qurei, however, holds no position that could be remotely analogized to a corporate "officer." He sits on an 18-person Executive Committee, does not possess the power or authority to exercise individually any judgment or discretion on behalf of the PLO, and has no administrative or day-to-day responsibility over PLO operations. *Id.* ¶ 6. At best, his role could be analogized to membership on a corporate board of directors. However, as we demonstrated in our opening brief, such a status would not require his production in response to a deposition notice. *See* Mem. at 10 (citing *Armstrong Cork Co. v. Niagara Mohawk Power Corp.*, 16 F.R.D. 389, 390 (S.D.N.Y. 1954) ("a corporation, for example, cannot be examined by a director who is not shown to be more than a traditional director of an American corporation without administrative responsibility or an active part in the actual conduct of the business on a day-to-day basis")).

       **C.**       **The PLO Should Not Have to Produce Mr. Qurei for Testimony About Fatah**

Assuming *arguendo* that the PLO can be ordered to produce Mr. Qurei, his deposition should still not be allowed because his knowledge as a member of the PLO Executive Committee is not relevant. Plaintiff's Opposition confirms that Mr. Qurei holds no relevant knowledge in his current capacity, Opp. at 2-7, but asserts he must be produced to testify about any relevant knowledge because it is assertedly "long and well established that a deponent may be questioned about any knowledge . . . outside of the capacity in which he is being deposed." Opp. at 13. Plaintiff ignores the contrary authority cited in our opening brief, Mem. at 11-13, and instead relies on two inapposite lines of cases.

First, Plaintiff relies on cases where individuals were deposed in their individual, rather than their corporate, capacities. For example, *Rainbow Popcorn Co. v. Intergrain Specialty Prods.*, No. 7:06CV5015, 2008 WL 2184116, at *12 (D. Neb. 2008), involved the deposition of a named defendant taken in his "individual capacity." *See also CFTC v. Midland Rare Coin Exch., Inc.*, No. 97-7422, 1999 U.S. Dist. LEXIS 16939, at *13, 14 (S.D. Fla. July 28, 1999) (deposition of "sole owner of [defendant] and one of only two officers" "in his individual capacity"). Those cases have no application here because Mr. Qurei is not a party to this action, and Plaintiff claims to seek to depose Mr. Qurei in his "corporate capacity" as the PLO. *See* Opp. at 9. If Plaintiff wishes to depose Mr. Qurei in his "individual capacity," he will have do so by compelling his attendance though service of process. Indeed, this is exactly how the plaintiffs were required to proceed in *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 329 (S.D.N.Y. 2006), a case relied upon by Plaintiff, Opp. at 14, where a deposition seeking the "personal testimony" of a "Nonparty-Respondent" occurred pursuant to subpoena. Likewise, Plaintiff's deposition of "Nonparty-Respondent" Mr. Qurei, which patently seeks his "personal testimony" in his "individual capacity," should only be allowed to proceed as can be required by subpoena or other process.

Second, Plaintiff relies on cases where organizations were deposed pursuant to Rule 30(b)(6). For example, in *King v. Pratt & Whitney*, 161 F.R.D. 475, 475 (S.D. Fla. 1995), the Court considered "whether a deponent produced pursuant to a Rule 30(b)(6) notice may only be questioned regarding issues described in the notice or may be questioned as broadly as any other deponent." This case obviously has no application here because Plaintiff has not sought to depose the PLO under Rule 30(b)(6). *Id. See also Lending Tree, Inc. v. Lowermybills, Inc.*, No. 3:05CV153-C, 2006 WL 2443685, at *2 (W.D.N.C. Aug. 22, 2006) (ordering Rule 30(b)(6) deposition); *Todd v. Precision Boilers, Inc.*, No. 07-0112, 2008 WL 4722338, at * 1 (W. D. La. Oct. 24, 2008) (same). *King* did note, however, that it would allow a Rule 30(b)(6) deponent to be questioned beyond the scope of the noticed topics only because "[t]his Court sees no . . . incentive for an examining party to somehow abuse this process." *King*, 161 F.R.D. at 476. The facts here, however, illustrate the potential for abuse of the process Plaintiff advocates. As the Court intuited at the October 14, 2009 hearing, Tr. at 18:12-14, it is now clear that

Plaintiff has noticed Mr. Qurei *qua* the PLO for the purpose of examining him about his knowledge *qua* Fatah. This type of "subterfuge," to use the Court's word, *id.*, ought not to be allowed, and Defendants' Motion should be granted.

## II. EVEN IF DEFENDANTS COULD BE REQUIRED TO PRODUCE MR. QUREI, THE COURT SHOULD NOT ORDER DEFENDANTS TO DO SO AT THIS TIME

Assuming *arguendo* that the Court has the authority to order the PLO to produce Mr. Qurei, the Court should not do so at this time because the information Plaintiff seeks from the PLO "can be obtained from some other source that is more convenient [and] less burdensome" than a deposition of the PLO through Mr. Qurei, such as document productions, interrogatory responses or depositions of lesser officials or Rule 30(b)(6) designees. Mem. at 13 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). Plaintiff devotes a substantial portion of his opposition brief to explicating his view that Mr. Qurei possesses relevant information about the two topics Plaintiff identified at the hearing, namely: (1) the relationship between Fatah and the Al Aqsa Martyrs Brigade, and (2) Fatah finances. Opp. at 2-7.[2]

It is not clear why Plaintiff devotes so much attention to the asserted relevance of Mr. Qurei's knowledge given the Court's acknowledgment at the hearing that "it sounds like he has got some relevant information." Tr. at 22:9-10. Indeed, Defendants have not contested that Mr. Qurei, as a former member of the Fatah Central Committee, may have relevant information about Fatah's activities. What Defendants have challenged is what the Court correctly recognized to be the issue at the hearing, namely, does the Plaintiff "get to require his appearance because he is now a member of the PLO" Executive Committee? *Id.* at 22:11-13. The answer to that question is "no," both for the reasons stated above, and because, if discovery is to be had *of the PLO* on these issues, there are clearly less burdensome alternatives that should first be exhausted.

Plaintiff initially argues that Defendants should have to produce Mr. Qurei because he allegedly made statements about Fatah and Al Aqsa in 2004, two years after the attack at issue, "in his capacity as the Prime Minister of the PA," and had the knowledge reflected in those statements "while serving as an officer of the PA." Opp. at 15. The article cited by Plaintiff, however, does not in fact say that Mr. Qurei made the statements at issue in his capacity as the PA Prime Minister. *Id.* Ex. A. Mr. Qurei was also a member of the Fatah Central Committee at that time, and, given that his alleged statements concern Fatah,

---

[2] Plaintiff's discussion of these issues includes a number of assertions about the legal elements of his theories of liability and the admissibility of certain evidence. *See* Opp. at 2-7 & nn. 3-4. Defendants do not respond in detail to these issues here because they are not germane to the instant motion, but note that they disagree with several of Plaintiff's assertions and reserve the right to address those issues at the appropriate point in this litigation.

PMB 387405.1

it seems at least as likely, if not more so, that his statements were made while wearing his "Fatah" hat. Plaintiff also asserts that it would be "ludicrous" for the Court to fail to order Mr. Qurei's production in light of his prior PA affiliation, *id.* at 15, but the fact that he is a former PA Prime Minister (who only assumed that office two years after the attack at issue) provides the Court with no authority to require his production now, *see Cameo-Parkway Records, Inc. v. Premier Albums, Inc.*, 43 F.R.D. 400, 401-02 (S.D.N.Y. 1967) (party not required to produce former president and director for deposition).

Plaintiff also argues that the PLO should be required to produce Mr. Qurei since he was assertedly "transferring funds from a PLO account to a Fatah account." Opp. at 15 (citing *id.* Ex. D). Plaintiff agrees with Defendants that in order for the Defendants to be found liable for the alleged "provision of funds to the organization that carried out the attack in which the plaintiff was harmed," Plaintiff must prove, at a minimum, that such funds were provided "during the period prior to the attack." *Id.* at 2. *See also* Mem. at 14. However, there were no unusual transfers between the alleged PLO and Fatah accounts mentioned in the article cited by Plaintiff between October 1, 2000 and the date of the attack on February 18, 2002. *See* Ex. 2 ¶¶ 8, 11 (no transfers from Account No. 111444/713 to Account No. 21250/510 over $250 other than salary and ordinary expense payments during the relevant time frame); Ex. 3 ¶¶ 9, 13 (same). Any knowledge Mr. Qurei may have about transfers between those accounts is thus unconnected to whether the PLO funded the attack at issue.

Plaintiff also claims that the PLO should produce Mr. Qurei because "Fatah is the main constituent faction of the PLO." Opp. at 15. But the PLO is more than just Fatah, and, as Plaintiff's characterization implies, includes additional constituent groups beyond Fatah. Although there are persons, such as Mr. Qurei, who have over time held positions in both the PLO and Fatah, Fatah is a separate organization which has not been named as a defendant in this action. Plaintiff has not offered any legal support for the notion that the PLO must produce any member of Fatah, and the Court justifiably appeared to doubt that proposition at the hearing. Tr. at 18:18-21. Plaintiff contends that *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001) requires the PLO to produce Mr. Qurei. *See* Opp. at 14-16. That case does not assist Plaintiff, however, because (1) the defendants in that case did not contest the propriety of the deposition at issue, (2) the subsidiary of which the deponent was a former officer was itself a party to the litigation, and (3) the deposition was only allowed after the Plaintiff had "already questioned several current and former lower level officials designated . . . pursuant to Rule 30(b)(6)." 203 F.R.D. at 105-06. None of those facts is present here.

Plaintiff also claims that the PLO should have to produce Mr. Qurei because he "is not a chief executive or 'apex' officer of the PLO," and that Defendants' citation of cases limiting depositions of senior executives in favor of alternate discovery "contradicts their claim that he is not an official of the PLO at all." Opp. at 16. Plaintiff is incorrect. One of Defendants' primary arguments is that the PLO

cannot be compelled to produce Mr. Qurei because he is not a PLO officer, director or managing agent. *See* Mem. Part I.B.  One of Defendants' alternative arguments is that, if the Court disagrees and finds that Plaintiff has satisfied his burden of demonstrating that Mr. Qurei is in fact an officer, director or managing agent of the PLO, the PLO should not be ordered to produce him for deposition until other, less burdensome, means of discovery have been utilized.  *See* Mem. Part II.  There is no contradiction in those alternate positions.  Indeed, if there is any contradiction in position, it is between Plaintiff's assertion at the hearing that Mr. Qurei holds a "top level position in the defendant PLO," Tr. at 4:22-23, and his assertion in the Opposition that Mr. Qurei is not "an 'apex' deponent," Opp. at 16.

Plaintiff also contends that the PLO should have to produce Mr. Qurei because he assertedly "has unique knowledge" of "Fatah's finances" and the relationship between Fatah and the Al Aqsa Martyrs Brigade.  Opp. at 16-17.  Plaintiff misses the point.  Defendants' point is that the cases cited in our opening brief which allowed depositions of executives on limited topics, all concerned situations in which the "unique knowledge" at issue was obtained as a result of the deponent's position in the organizational party, and Plaintiff has not shown that Mr. Qurei has *the PLO's unique knowledge* about any relevant subject.  To the contrary, Plaintiff's opposition actually demonstrates that, as a current member of the PLO Executive Committee, seven years after the event at issue, Mr. Qurei's knowledge *qua* the PLO is both not unique and not relevant, Opp. at 2-7, 15-16, and, for that reason, the Court ought not to order the PLO to produce him in accordance with the authorities previously cited, Mem. at 11-12, 14-15.

Plaintiff also complains that Defendants "have not identified any other official of the PA or PLO with any knowledge of the internal details of Fatah's finances."  Opp. at 17.  The response to this is two-fold, both of which illustrate why the protective order is proper.  First, Defendants have not done so because they have not been asked to do so.  If Plaintiff serves Defendants with, for example, a Rule 30(b)(6) deposition notice requiring a designee on this topic, Defendants will respond as required and produce deponents who consent to testify on Defendants' behalf about any such information Defendants may possess.  Plaintiff has not yet done so, and the PLO should not be ordered to produce Mr. Qurei until that less burdensome discovery process is exhausted.  *See* Mem. at 14-16.[3]  Second, it is not clear whether Plaintiff is referring to the PLO's or Fatah's "knowledge of the internal details of Fatah's

---

[3] Plaintiff's similar gripes that Defendants' prior document productions and forthcoming interrogatory responses do not pertain "to the use Fatah made of the funds once they were received . . . nor to the details of Fatah's budget" and have "nothing to do with the question of whether Al-Aksa is part of Fatah," Opp. at 17, have a similar response:  If Plaintiff will properly seek discovery from Defendants on those issues, Defendants will properly respond to the extent of their knowledge on those issues.  Defendants' failure to answer interrogatories that Plaintiff has not asked simply does not justify ordering the PLO to produce Mr. Qurei.

finances." If it is the former, *i.e.*, discovery of the PLO's knowledge, it can obviously be obtained through the less burdensome means of a Rule 30(b)(6) deposition on such a topic. If it is the latter, however, *i.e.*, discovery of Fatah's knowledge, Plaintiff should be required to obtain that discovery from Fatah, rather than using the "subterfuge" of taking a deposition of the PLO to discover the knowledge of Fatah. *See* Tr. at 18:12.

Plaintiff also asserts that "there is no good reason for the plaintiff to waste his limited resources taking Rule 30(b)(6) depositions," but the decisions cited in our opening brief clearly explain why, "'[p]rior to permitting the deposition of a high level corporate executive, the court may wish to require a Rule 30(b)(6) deposition,'" which remains the "'preferred approach for deposing' an entity." Mem. at 15-16 (quoting *Folwell v. Sanchez Hernandez*, 210 F.R.D. 169, 173 (M.D.N.C. 2002)). There is no good reason for this Court to do otherwise here.

Plaintiff also argues that the PLO should be ordered to produce Mr. Qurei because "the only witness who can" assertedly "confirm" Mr. Qurei's alleged "admission regarding Al-Aksa and Fatah . . . is Qurei himself." This argument is both wrong and irrelevant. There is no reason why someone other than Mr. Qurei cannot testify on the Defendants' behalf about whether (1) Mr. Qurei actually said what he is now quoted as saying, or, (2) perhaps more importantly, whether what Mr. Qurei is reported to have said is correct.[4] Moreover, as we demonstrated in our opening brief, the statements at issue took place two years *after* the attack at issue and are therefore not probative of Defendants' knowledge *prior* to the attack, Mem. at 13-14, which, as Plaintiff concedes, is all that is relevant, Opp. at 2. Plaintiff claims that nothing in Mr. Qurei's statement "indicates that his characterization of the Al-Aksa Brigades was limited solely to the period in which he happened to make it," Opp. at 17, but it is equally true that nothing in the statement indicates that it was retrospective to the time of the attack, *id.* Ex. A. Indeed, if anything, Mr. Qurei's purported statement that the "al Aqsa martyr brigade would be absorbed in the Fateh institutions," *id.*, suggests that Al Aqsa's affiliation was being modified in 2004.

### III. THE COURT SHOULD NOT ENTER AN ORDER THAT WOULD ONLY SERVE TO SUBJECT THE PLO TO SANCTIONS

Our opening brief also demonstrated that the Court should not order the PLO to produce Mr. Qurei because he has already refused to appear, and such an order can only therefore serve as a predicate for sanctions. Mem. Part III. Plaintiff interposes five arguments in response. First, Plaintiff retorts that "there is no real evidence that Qurei will not appear." Opp. at 18. Although Defendants believe that the

---

[4] It is worth noting in this regard that Plaintiff's brief puts quotation marks around alleged statements of Mr. Qurei which do not appear in quotes in the article. *Compare* Opp. at 3 *with id.* Ex. A.

on-the-record representation by its counsel should be sufficient, Tr. at 14:14-19, they are filing herewith a declaration of the PLO's Secretary General, which confirms the representations made by counsel. *Compare id. with* Ex. 1 ¶ 8.

Second, Plaintiff claims that if Defendants' Motion is granted, "defendants will never produce any salient witnesses." Opp. at 18. *See also id.* at 11 (making same argument). This assertion is obviously belied by the fact that Defendants have previously produced a deponent in response to an order of this Court. *See* Dkt # 284. Defendants will continue to do so for those witnesses which they control. They should not now be ordered to produce a witness they do not control on pain of sanctions.

Third, Plaintiff asserts that Defendants' position on this motion is inconsistent with "defendants' representation that they would cooperate fully with discovery." Opp. at 18. *See also id.* at 16 (making same argument). This is a *non sequitur*. Defendants have never represented that they would not raise legitimate objections to discovery, and the *bona fide* nature of Defendants' motion is obviously confirmed by the Court's decision to allow the parties to brief this issue.

Fourth, Plaintiff argues that if Mr. Qurei "is defendants' officer, and if they cannot produce him the defendants, not the plaintiff, should bear the consequences." Opp. at 18. Two points are worth making here. First, the Advisory Committee Note to the 1970 Amendment to Rule 37(d) states that "when a corporation is unable through good faith efforts to compel a director to make discovery, it is unlikely that the court will impose sanctions." The PLO has clearly made a good faith effort here and deserves no sanction. Second, because Plaintiff patently seeks discovery from Mr. Qurei *qua* Fatah, rather than *qua* PLO, the PLO should not be sanctioned for its inability to produce Mr. Qurei to testify about Fatah's information.

Finally, Plaintiff asserts that this argument is premature because the PLO has not yet violated a court order. Opp. at 18. However, in *Cameo-Parkway Records,* 43 F.R.D. at 401-02, the court vacated a deposition notice requiring a corporate defendant to produce a former officer whom it no longer controlled in order to avoid the possibility of sanctions being imposed on the defendant for the former officer's non-appearance. That court instead required the plaintiff to pursue the former officer "in his individual capacity." *Id.* A similar result should obtain here.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted. Alternatively, if the Court is inclined to order that Mr. Qurei be produced, the PLO respectfully requests that, under the circumstances, the Court give the PLO the option of producing an alternate deponent in lieu of Mr. Qurei. *See Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985) (authorizing corporation "to produce someone other than" the noticed individual where it was a "close question" whether noticed individual was a "managing agent").

Dated:  November 2, 2009                    Respectfully submitted,

                                                By:   /s/ Gary A. Woodfield
Gary A. Woodfield (Fla. Bar No. 563102)
gwoodfield@eapdlaw.com
**Edwards Angell Palmer & Dodge LLP**
One North Clematis Street
Suite 400
West Palm Beach, FL 33401
Telephone: (561) 833-7700
Facsimile: (561) 655-8719

Richard A. Hibey
rhibey@milchev.com
Mark J. Rochon
mrochon@milchev.com
Charles F. B. McAleer, Jr.
cmcaleer@milchev.com
Timothy P. O'Toole
totoole@milchev.com
**Miller & Chevalier Chartered**
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Telephone:  (202) 626-5800
Facsimile:  (202) 626-5801

**Attorneys for Defendants PA/PLO**

- 10 -

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 04-20225-CIV-SEITZ/O'SULLIVAN**

|  |  |
|---|---|
| MOSHE SAPERSTEIN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE PALESTINIAN AUTHORITY, *et al.*, | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 2nd day of November, 2009, a true and correct copy of the foregoing "Reply Memorandum of Law in Support of Defendants' Motion for Entry of a Protective Order Regarding Plaintiff's Notice of Deposition of Ahmed Qurei" was served by ECF, with a copy automatically being provided to the following:

        Robert J. Tolchin
        THE BERKMAN LAW OFFICE, LLC
        111 Livingston Street, Suite 1928
        Brooklyn, NY 11201
        Telephone:   (718) 855-3627
        Facsimile:    (718) 855-4696
        Email:        rtolchin@berkmanlaw.com

        Isaac M. Jaroslawicz
        JAROSLAWICZ LAW OFFICES
        1177 Kane Concourse, #222
        Bay Harbor Islands, FL 33154
        Telephone:   (305) 398-7739
        Facsimile:    (786) 206-3575
        Email:        Isaac@MyLawyerIsaac.com

        **Attorneys for Plaintiff Moshe Saperstein**

        /s/ Gary A. Woodfield
        Gary A. Woodfield