UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN

MOSHE SAPERSTEIN, et al.,

        Plaintiffs,

v.

THE PALESTINIAN AUTHORITY;
THE PALESTINE LIBERATION
ORGANIZATION,

        Defendants.

_____/

**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S
ORDERS OF AUGUST 25, SEPTEMBER 2 AND OCTOBER 14, 2009**

**Introduction**

On August 25, 2009, Magistrate Judge O'Sullivan held an informal discovery hearing regarding plaintiff's Second Request for Production ("Second RPD") to defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO").

At the hearing Magistrate Judge O'Sullivan issued several orders on the record requiring the defendants to produce *some* documents sought in the Second RPD, and on September 2, 2009, the Magistrate Judge entered a written order meant to reflect the oral orders given at the hearing.

As detailed *infra*, plaintiff never made a motion to compel defendants to comply with the Second RPD; indeed, when during the hearing plaintiff's counsel expressed his intention to make a motion to compel, Magistrate Judge O'Sullivan prohibited him from doing so. Nor can the arguments made by plaintiff's counsel during the brief informal hearing be considered an "oral motion" to compel both because Magistrate Judge O'Sullivan refused to permit plaintiff's counsel to submit exhibits in support of his arguments and because Magistrate Judge O'Sullivan's procedures clearly define the informal hearing as a ***pre-motion*** event.

Plaintiff's position is that since he never made any motion to compel defendants' compliance with the Second RPD (indeed, was prohibited from doing so), the orders issued by Magistrate Judge O'Sullivan on August 25 and September 2 directing defendants to produce *some* of the documents sought in the Second RPD cannot preclude the plaintiff from seeking to compel the production of *other* documents requested in the Second RPD whose production was not ordered by Magistrate Judge O'Sullivan.

In other words, because plaintiff never filed a motion to compel production of the documents requested in the Second RPD, Magistrate Judge O'Sullivan was not empowered to rule that plaintiff is not entitled to the documents whose production was not ordered by him.

Accordingly, on September 16, 2009, the plaintiff filed papers [DE 343] moving to clarify that the orders issued by Magistrate Judge O'Sullivan on August 25, 2009, and September 2, 2009 ("Orders"), directing defendants to produce certain documents requested in plaintiff's Second Request for Production made no rulings on the merits regarding documents requested in plaintiff's Second Request for Production whose production was not directed in the Orders and so do not preclude the plaintiff from seeking to compel defendants to produce such other documents as the plaintiff may find appropriate in the future ("Motion to Clarify").

Those same papers [DE 343] also presented plaintiff's objections to the Orders ("Objections") in the event that the Court denied the Motion to Clarify.

On September 21, 2009, Magistrate Judge O'Sullivan issued an order in response to the Motion to Clarify stating that the motion was granted, and that "[t]he August 25, 2009 rulings from the bench and the September 2, 2009 Order do not preclude the plaintiff from properly seeking to compel documents that were not the subject of the Court's prior rulings." DE 346.

Plaintiff understood Magistrate Judge O'Sullivan's September 21, 2009, order as granting plaintiff' Motion to Clarify in full, thereby mooting plaintiff's Objections.

Defendants interpreted the September 21, 2009, order as not mooting the Objections, and they therefore filed a Memorandum of Law in Opposition to Plaintiff's Objections to August 25, 2009, and September 2, 2009, Orders ("Defendants' Response"). DE 350.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Plaintiffs moved to strike Defendants' Response on the grounds that plaintiff's objections had been mooted by Magistrate Judge O'Sullivan's September 21, 2009, order. DE 351.

On October 14, 2009, Magistrate Judge O'Sullivan held an informal discovery hearing on another matter. During the course of that hearing, Magistrate Judge O'Sullivan clarified that (notwithstanding his granting of the Motion to Clarify) the orders issued by him on August 25 and September 2 directing defendants to produce *some* of the documents sought in the Second RPD do indeed preclude the plaintiff from seeking to compel the production of *other* documents requested in the Second RPD whose production was not ordered. Ex. P at 33:22-36:9.

At that hearing, Magistrate Judge O'Sullivan also ruled that, "[t]here are no outstanding objections as of right now to any of my orders" and that if plaintiff desired to file objections to the August 25 and September 2 orders he should proceed to do so. *Id*. at 91-93.

Following that hearing, pursuant to his clarification that the orders issued by him on August 25 and September 2 directing defendants to produce some of the documents sought in the Second RPD precluded the plaintiff from seeking to compel production of other documents requested in the Second RPD whose production was not ordered, Magistrate Judge O'Sullivan entered an order denying plaintiff's Motion to Strike. DE 351.

Accordingly, in light of Magistrate Judge O'Sullivan's ruling that there are currently no outstanding objections to any of his orders and that if plaintiff seeks to file objections he should now do so, plaintiff hereby respectfully objects pursuant to Fed. R. Civ. P. 72(a) to the discovery orders issued by Magistrate Judge O'Sullivan on August 25 and September 2, and to the orders issued on October 14, 2009, clarifying that the August 25 and September 2 orders precluded the plaintiff from seeking to compel production of documents requested in the Second RPD whose production was not ordered and denying the Motion to Strike.

## RELEVANT BACKGROUND

Plaintiff was injured in a terrorist attack carried out by the so-called "Al-Aksa Brigades." Two members of the "Al-Aksa Brigades," Naim Mutzran and Nizar Dahliz, were convicted by an Israeli court of both membership in the "Al-Aksa Brigades" and of carrying out the attack.

- 3 -

Dahliz's conviction for membership in the "Al-Aksa Brigades" was based specifically upon the fact that he carried out the attack that injured plaintiff **on behalf of** the "Al-Aksa Brigades."[1]

Defendants have repeatedly admitted that the "Al-Aksa Brigades" is nothing but a *nom de guerre* used by the Fatah (or: "Fateh") faction of the PLO when it carries out terrorist attacks.

For example, the PA's own website published a statement from (then) PA Prime Minister Ahmed Qurei that "**we publicly declared the al Aqsa martyr brigade is a part of Fateh movement**" and that "**the Al-Aqsa Martyrs Brigades, military wing of the Fateh movement will not be dissolved and Fateh will never relinquish its military wing**." Ex. A.

Likewise, during an interview with Al-Jazeera TV, the PA's National Security Advisor, Jibril Rajoub, was asked whether Fatah is considering disbanding the Al-Aqsa Martyrs Brigades and Rajoub replied: "**This is nonsense which doesn't deserve comment. The Al-Aqsa Martyrs Brigade is part of Fatah. … Fatah can't be divided**." Ex. B.

Similarly, in an interview with BBC TV, Fatah leader Ata Abu Rumaileh explained that:

> Fatah has two sections: a military wing, led by the military and a political wing led by the politicians. But **there is no difference between Fatah and the Al-Aqsa Martyrs Brigades**.

Ex. C at 19 (emphasis added).

Since, as these admissions by defendants show, the "Al-Aksa Brigades" are merely the name for the "military wing" of Fatah and constitute an indivisible part of Fatah, it is clear that the attack in which plaintiff was injured **was carried out by Fatah**.

Plaintiff's action is brought under the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA"). Provision of funds to the organization that carried out the attack in which the plaintiff was harmed gives rise to liability under § 2333 of the ATA (assuming the other elements of § 2333

---

[1] Because carrying out the attack on behalf of the Al Aksa Brigades was a factual element upon which Dahliz's conviction for membership in the Al Aksa Brigades was based, the Israeli court's finding that the attack was carried out on behalf of the Al Aksa Brigades (and not as an independent act) is admissible under Federal Rule of Evidence 803(22).

- 4 -

are satisfied) because such conduct violates, *inter alia*, the criminal prohibitions of 18 U.S.C. §§ 2339A and 2339B. *See, e.g., Boim v. Holy Land Found.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*); *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005).[2]

In light of the above, the plaintiff is seeking discovery, *inter alia*, of documents and information that will prove that the PA and the PLO funded Fatah during the years prior to the attack, and which will evidence both the ***use made*** and the ***extent*** of such funding.

Plaintiff's Second RPD was intended to obtain precisely such documents and evidence. The Second RPD requests four categories of documents:

**Request # 1** seeks documents relating to Palestine National Fund ("PNF") account no. 111444/713 in the Arab Bank in Jordan ("PNF Account 111444/713") including, particularly, documents relating to transfers between PNF Account 111444/713 and account no. 21250/510 in the Arab Bank in Jordan. Ex. D at ¶ 1.

Defendants agree that the PNF is the PLO's treasury, and that accounts titled to the PNF – including PNF Account 111444/71 – belong to and hold funds belonging to the PLO.[3]

Plaintiff sought discovery regarding PNF Account 111444/713 generally, and about transfers between that account and account no. 21250/510 in the Arab Bank specifically, in light of strong evidence that account no. 21250/510 is a Fatah account and that the PLO had transferred funds from PNF Account 111444/713 to Fatah account no. 21250/510.

---

[2]     Neither §§ 2339A nor 2339B require that the organization that carried out the attack be designated as a terrorist group. While defendants have previously claimed that § 2339B requires such a designation the plain language of the provision makes clear that it applies to ***either*** a designated terrorist organization ***or*** to any group that "has engaged or engages in terrorist activity ... or ... terrorism." § 2339B(a)(1).

[3]     *See* Ex. K at ¶ 7 ("Pursuant to the PLO's Charter, the Palestine National Fund was formed to serve as the PLO's treasury") and at ¶ 12 ("the PLO does not have or own any material assets, including bank accounts, that are not reflected in the books and records of the PNF"); Ex. L at 14:20-21 ("MR. McALEER: 'Well, the PNF is the treasury of the PLO.'").

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

This evidence came to light in March 2008, when the PA representative to Romania, Adli Sadek, accused PA/PLO leader Ahmed Qurei of depositing million of dollars of PLO funds into his private bank account. *See* Ex. E.

In response, Qurei issued a statement (published by the respected Palestinian news agency Ma'an) confirming that he had indeed made the transfer from PNF Account 111444/713 into account no. 21250/510, but explaining that "**Account No. 21250/510 … refers to the account of the Palestinian National Liberation Movement (Fatah) in the Arab Bank in Jordan**. The account is in the names of different persons known to the movement and **the decision of the leadership since the mid-eighties and the start of the Fatah movement was to register the account in the names of different persons for security reasons**." *See* Ex. F.

Since, in light of the above, PNF Account 111444/713 has demonstrably been used by the PLO to fund Fatah, documents relating to PNF Account 111444/713, and particularly to transfers to Fatah account no. 21250/510, are therefore extremely relevant to plaintiff's case.[4]

**Request # 2** seeks documents regarding the transfer of funds from any other PNF accounts (excluding PNF Account 111444/713) to Fatah account No. 21250/510, to any other account controlled by Fatah and to any officer, agent or employee of Fatah. Ex. D at ¶ 2.

**Request # 3** seeks documents relating to PA Finance Ministry accounts nos. 01810058/4/8 and 00810058/4/1 at the Bank of Jordan ("BOJ Accounts"). Ex. D at ¶ 3.

Plaintiff sought discovery regarding the BOJ Accounts because documents and returned checks captured by the Israel Defense Forces ("IDF") prove that the funds in the BOJ Accounts were not only used to fund Fatah, but were placed at the disposal of and used by Marwan Barghouti, who was **both the head of Fatah and the commander of the Al-Aksa Brigades**

---

[4] During his April 1, 2009, deposition in this matter, the PA's Minister of Civil Affairs, Hussein al-Sheikh, identified Mr. Qurei (who is currently a member of the PLO Executive Committee) as being "in charge of supervising Fatah's money." In light of that fact, and as well as Mr. Qurei's statements regarding the identity between the Al Aksa Brigades and Fatah and his transfer of funds from the PLO to Fatah (Exs. A & F), the plaintiff has noticed Mr. Qurei's deposition. Consistent with their refusal to provide any substantive discovery in this case, defendants have objected to Mr. Qurei's deposition and declined to produce him.

- 6 -

until his arrest and conviction by the Tel Aviv District Court on multiple murder charges. *See* Ex. G (IDF press release describing the seized documents and returned checks showing that Barghouti drew freely on the BOJ Accounts); Ex. H (report issued by the Intelligence and Terrorism Information Center[5] regarding the captured documents and checks and featuring photographs of checks drawn by Barghouti on the BOJ Accounts); Ex. I (decision of the Tel Aviv District Court describing the charges against Barghouti and his role as leader of Fatah and the Al-Aksa Brigades); Ex. J (BBC article discussing Barghouti's murder convictions).

Since the PA transferred funds in the BOJ Accounts to Fatah – **and specifically to Al-Aksa Brigades leader Marwan Barghouti** – documents relating to transactions in the BOJ Accounts are obviously **<u>extremely relevant</u>** to the plaintiff's action.

**Request # 4** seeks documents regarding the transfer of funds from any other PA accounts (excluding the BOJ Accounts) to Fatah account No. 21250/510, to any other account controlled by Fatah and to any officer, agent or employee of Fatah. Ex. D at ¶ 4.

Defendants served objections to Plaintiff's Second RPD (Ex. M) ("Objections") accompanied by a cover letter (Ex. N).

The Objections contained general boiler-plate objections to *all* the documents requested in the Second RPD. Defendants also *specifically* objected to all of the requests (except for 3), and stated that they would not produce any documents "unless and until the Plaintiffs modify, amend, or limit this Request in order to address and cure Defendants' pending objections."

With respect to requests 1(f), 1(j) and 3(j), defendants agreed to produce "non-privileged documents that are responsive to a reasonable and proper scope and interpretation of this Request." *See* Ex. M at Specific Objections ¶¶ 1(f), 1(j) & 3(j).

Following a meet-and-confer call between counsel for the parties on July 10, 2009, the plaintiff sent defendants a letter narrowing the Second RPD in order to respond to and moot some of defendants' objections. Ex. O.

---

5       Available at

http://www.terrorism-info.org.il/malam_multimedia/English/finincing/pdfs/11.pdf.

- 7 -

Specifically, plaintiff's letter: (i) radically shorted the production period from eight years to 16.5 months; (ii) withdrew entirely requests 3(b), 3(d) and 3(j); and (iii) excluded from production any funds transfers to made Fatah personnel employed by the PA or PLO which constituted solely payment of salaries for such employment. *Id*.

Modification (iii) was made because the defendants had justifiably pointed out in their Objections that they have many thousands of employees (many of whom are also officers or members of Fatah) and the Second RPD could be construed to require production of documents evidencing mere salary payments made to such PA and PLO employees. Since such payments are made in consideration for employment by the PA and PLO, rather than as contributions to Fatah, plaintiff has no interest in such documents and so modified this request accordingly.

Despite these generous modifications defendants still refused to provide ***any*** of the documents sought in the Second RPD (except for account-opening papers for the BOJ Accounts – which are the least important and least useful of any of the documents requested) and the plaintiff was therefore constrained to notice a pre-motion hearing before Magistrate Judge O'Sullivan pursuant to the Magistrate Judge's Discovery and Sanction Procedure.

The pre-motion hearing was held on August 25, 2009. During the course of the hearing, plaintiff's counsel stated his desire to make a motion to compel production, but Magistrate Judge O'Sullivan prohibited the plaintiff from filing a motion to compel. *See* Ex. L at 33:4-19. Magistrate Judge O'Sullivan also declined to allow plaintiff's counsel to hand up plaintiff's July 10 letter narrowing the Second RPD. *Id*. at 6:19-24.

At the close of the hearing, Magistrate Judge O'Sullivan issued a series of orders on the record and directed the parties to submit a joint order reflecting the orders and setting an agreed date for production by September 2, 2009. *Id*. at 43-51.

The parties were unable to agree on a joint order, and were directed by Magistrate Judge O'Sullivan to submit separate proposed orders.

On September 2, 2009, Magistrate Judge O'Sullivan entered an order directing defendants to produce certain documents requested in the Second RPD by October 19, 2009. DE 339.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

**OBJECTIONS**

**I.      Magistrate Judge O'Sullivan Erred by Ruling on the Other Documents Without Allowing Plaintiff to Make a Motion to Compel**

As discussed *supra*, Magistrate Judge O'Sullivan issued the August 25 and September 2 orders without permitting the plaintiff to make a motion to compel in which he could and would have set forth his position regarding each of his discovery requests and each of defendants' Objections in detail, and submitted exhibits in support thereof. *See* Ex. L at 33:4-19.[6]

Since those orders were not issued in response to a motion to compel, the orders cannot be construed as ***denying*** a motion by plaintiff to compel production of documents sought in the Second RPD.

Therefore, the August 25 and September 2 orders cannot constitute rulings regarding documents requested in plaintiff's Second RPD whose production was ***not*** directed in those orders ("Other Documents") and so cannot preclude the plaintiff from seeking to compel defendants to produce Other Documents, as the plaintiff may find appropriate in the future.

This conclusion is supported by the fact that a federal court is not permitted to prohibit a party from filing a motion – such as a motion to compel production – that is permitted by the Federal Rules. *See, e.g., Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2nd Cir. 1987) ("[A] court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure."); *In re Halliburton Co.*, 991 F.2d 810 (Table) at *2 (Fed. Cir. 1993) (same).

---

[6]      During the course of the August 25 hearing, the plaintiff voluntarily withdrew his requests for certain categories of documents. *See e.g.* Ex. L at 13:7-9 (withdrawing request for documents evidencing payments to Fatah and Fatah personnel constituting expenses) and at 46:10-24 (withdrawing request for documents evidencing payments of less than $250). Obviously, since these requests were voluntarily withdrawn prior to Magistrate O'Sullivan's rulings they were never litigated, and the August 25 and September 2 orders therefore could not and did not rule on these requests and plaintiff is entitled to reassert these requests at any time. Accordingly, there is no reason for plaintiff to file any objections in respect to these requests.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Thus, "[a]lthough it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, the judge may not require that the court's permission be secured at such a conference before a party may file the motion." *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 39 (2nd Cir. 1995) (citation and footnotes omitted).

Indeed, in both *Richardson* and *Halliburton* the courts of appeals granted mandamus relief because the respective district courts had not allowed parties to file motions.

Therefore, Magistrate Judge O'Sullivan's ruling that the August 25 and September 2 orders constituted rulings on the merits regarding the Other Documents and preclude the plaintiff from seeking to compel production of the Other Documents in the future – without permitting plaintiff to make a motion to compel as he requested – is clearly erroneous.

Nor can the arguments made by plaintiff's counsel at the August 25 informal hearing possibly be considered an "oral motion" to compel:

First, Magistrate Judge O'Sullivan's Discovery and Sanction Procedure specifically states that the purpose of the informal hearing is to "minimize the necessity of motions." Thus, the hearing itself is obviously *not* an opportunity to make a motion.

Second, the circumstances of the hearing – at which the Magistrate Judge learns about the dispute and receives the discovery requests and objections for the first time and the parties' opportunity to argue and submit exhibits is extremely limited – cannot possibly be viewed as constituting the motion to compel permitted and anticipated by the Federal Rules.

Third, Magistrate Judge O'Sullivan declined to receive or examine plaintiff's July 10 letter limiting the scope of the discovery requested in the Second RPD. Ex. L at 6:19-24. Thus, when he issued the August 25 and September 2 rulings, Magistrate Judge O'Sullivan did not have before him the actual scope and substance of the plaintiff's discovery requests (which were modified by the July 10 letter that he declined to receive).

Clearly, it is impossible to know what result Magistrate Judge O'Sullivan would have reached had he permitted plaintiff to file a motion to compel. What is certain is that the plaintiff had an absolute right to file a motion setting forth his position in detail and presenting his

- 10 -

exhibits, that he was deprived of that right and that Magistrate Judge O'Sullivan issued his rulings without allowing plaintiff to present his position in the manner guaranteed him by the Federal Rules.

Since a decision prohibiting a party from filing a motion permitted under the Federal Rules is *ultra vires* and grounds for mandamus relief (*see Richardson*, 825 F.2d 647 and *Halliburton*, 991 F.2d 810) such a decision is therefore necessarily "clearly erroneous" and "contrary to law" within the meaning of Rule 72.

Therefore, the August 25 and September 2 rulings are fundamentally flawed and should be summarily vacated *pro tanto* (i.e. to the extent that they preclude the plaintiff from obtaining the Other Documents), so that the plaintiff can file a motion to compel the production of the Other Documents.[7]

## II. The September 2 Order Does Not Reflect the August 25 Orders

On August 25, Magistrate Judge O'Sullivan ordered defendants to produce documents evidencing all transfers from the BOJ accounts. *See* Ex. L at 44:8-10 ("[A]ny transfers that went from or transfers from the P.A. Finance Ministry account which numbers are reflected in here that end in 4/8 and 4/1.").

This order reflects ¶ 3(c) of the Second RPD, which sought "documents evidencing or reflecting all withdrawals, debits and/or transfers from the BOJ accounts." Ex. D at ¶ 3(c).

Yet, in contrast to the August 25 order, the September 2 order does ***not*** require the defendants to produce documents evidencing "any transfers that went from or transfers from the" BOJ accounts. Instead, the September 2 order requires the defendants to produce only records of

---

[7] Plaintiff recognizes and respects the need to minimize unnecessary motion practice and does not seek to exercise his right to move to compel merely because that right exists. Rather, plaintiff objects to being deprived of his right to file a motion because this case is not an ordinary, garden-variety suit and involves factual and legal issues which, with all due respect, are for the most part new and unfamiliar to the Court and so require thorough briefing and the submission of exhibits.

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

transfers from any PA account, including the BOJ accounts, to Fatah or any officer or director of Fatah. DE 339 at ¶ 2.

The difference between the two orders is glaring: the August 25 order requires the PA to produce records of *all* transfers out of the BOJ accounts, where as the September 2 order requires only transfers to Fatah or officer or directors of Fatah – which effectively allows the defendants to unilaterally screen the discovery production and exclude any incriminating transfers.

Since there was no further briefing by the parties subsequent to the August 25 hearing, it is apparent that the discrepancy between the August 25 order and the September 2 order was not the result of a change of position by Magistrate Judge O'Sullivan, but of an oversight.

Accordingly, because it does not reflect the August 25 order – as it was intended to – the September 2 order is "clearly erroneous" within the meaning of Rule 72 and so should be modified to conform to the August 25 order by requiring defendants to produce records of "any transfers that went from or transfers from the P.A. Finance Ministry account which numbers are reflected in here that end in 4/8 and 4/1." Ex. L at 44:8-10.

### III. The August 25 and September 2 Orders Omit Crucial Discovery Requests Regarding the PNF Account 111444/713 and the BOJ Accounts

As detailed above, PNF Account 111444/713 has been used by the PLO to transfer funds to Fatah, and the BOJ Accounts were used by the PA to transfer funds to **the leader of both Fatah and the Al Aksa Brigades**, Marwan Barghouti, who was convicted by the Tel Aviv District Court of numerous terrorist murders. *See* Exs. F, G, H, I & J.

Accordingly, ¶ 1(c) of the Second RPD requested records evidencing all withdrawals, debits and/or transfers from PNF Account 111444/713 and ¶ 3(c) of the Second RPD requested documents evidencing all withdrawals, debits and/or transfers from the BOJ accounts. *See* Ex. D at ¶¶ 1(c), 3(c).

Plaintiff requested records of *all* withdrawals, debits and/or transfers from these three accounts in light of the evidence (Exs. F, G, H, I & J) these two specific accounts have been used not only to fund Fatah, but to fund Fatah/Al Aksa terrorist chief Marwan Barghouti.

- 12 -

Given the abundant evidence regarding the special significance of these three specific accounts, plaintiff requested documents regarding *all* transfers out of these accounts during the relevant period (October 1, 2000 through February 18, 2002) in order to enable to plaintiff to examine all of the transfers, **without giving defendants the ability to screen their production to exclude incriminatory evidence**.

It would be naïve in the extreme to believe that defendants will voluntarily produce proof of their provision of funding to convicted Fatah/Al Aksa terrorist chief Marwan Barghouti.

Accordingly, it is crucial that the defendants be required to produce the *complete* account statements for this period of time, which will reflect *all* transfers and withdrawals from these accounts and deny the defendants any opportunity to unilaterally tailor their production.

Nor is there any burden involved: even if they do not have these records in hand, defendants can obtain these documents in a matter of hours from the respective banks.

Indeed, in his August 25 order, Magistrate Judge O'Sullivan recognized the importance of obtaining such complete records, and ordered defendants to produce documents evidencing all transfers from the BOJ Accounts. *See* Ex. L at 44:8-10 ("[A]ny transfers that went from or transfers from the P.A. Finance Ministry account which numbers are reflected in here that end in 4/8 and 4/1.").

Unfortunately through, as discussed above, the September 2 order does not reflect the August 25 order, and allows the defendants to decide for themselves which transfers from the BOJ accounts were to Fatah or Fatah officers or directors. That is a recipe for mischief.

Likewise, neither the August 25 order nor the September 2 order requires the defendants to produce the complete record of transfers and withdrawals from PNF Account 111444/713.

As discussed above, this case turns in great part on the defendants' provision of funding to Fatah, including the "armed wing" of Fatah – the "Al Aksa Brigades." Plaintiffs have submitted extremely compelling evidence (Exs. F, G, H, I & J) that three specific accounts controlled by the defendants – PNF Account 111444/713 and the BOJ Accounts – were used by the defendants to fund Fatah in general and Fatah's Al Aksa Brigades in particular.

- 13 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Plaintiffs are therefore entitled to the full records of all transfers, withdrawals and debits from these accounts in order to prove their case, and Magistrate Judge O'Sullivan's exclusion of these documents from his orders was thus "clearly erroneous" within the meaning of Rule 72.

The Court should therefore modify those orders to require defendants to produce the documents requested in ¶¶ 1(c) and ¶ 3(c) of the Second RPD.

## IV.    The October 14 Orders Were Erroneous

In light of all the above, the orders issued by Magistrate Judge O'Sullivan on October 14, 2009, holding that the August 25 and September 2 orders precluded the plaintiff from seeking to compel production of Other Documents, and denying the Motion to Strike, were clearly erroneous.

Dated: November 2, 2009                              Respectfully submitted,

**JAROSLAWICZ LAW OFFICES**

By:  s/: Isaac M. Jaroslawicz
Isaac M. Jaroslawicz, Esq.
Florida Bar No. 979510
E-mail address: Isaac@MyLawyerIsaac.com
1177 Kane Concourse, #222
Bay Harbor Islands, Florida 33154
Telephone: 305.398.7739
Facsimile: 786.206.3575

Attorneys for Plaintiff Moshe Saperstein

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/: Isaac M. Jaroslawicz<br>
Isaac M. Jaroslawicz, Esq.<br>
Florida Bar No. 979510<br>
E-mail address: Isaac@MyLawyerIsaac.com<br>
<b>JAROSLAWICZ LAW OFFICES</b><br>
1177 Kane Concourse, #222<br>
Bay Harbor Islands, Florida 33154<br>
Telephone: 305.398.7739<br>
Facsimile: 786.206.3575

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

<u>**SERVICE LIST**</u>

**Saperstein v. The Palestinian Authority**
**CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN**
**United States District Court, Southern District of Florida**

**Ramsey Clark, Esq.**
**Lawrence W. Schilling, Esq.**
Ramsey Clark & Lawrence W. Schilling
37 W 12th Street, Suite 2B
New York, NY 10011
Tel: 212-989-6613; Fax: 212-979-1583
*Attorneys for Defendants*

**Mark J. Rochon, Esq.**
Email: mrochon@milchev.com
**Richard A. Hibey, Esq.**
Email: rhibey@milchev.com
**Timothy P. O'Toole, Esq.**
Email: totoole@milchev.com
**Lamia R. Matta, Esq.**
Email: lmatta@milchev.com
**Charles F.B. McAleer Jr., Esq.**
Email: cmcaleer@milchev.com
**Brian Hill, Esq.**
Email: bhill@milchev.com
Miller & Chevalier Chartered
655 15th Street NW, Suite 900
Washington, DC 20005-6701
Tel: 202-626-5800; Fax: 202-626-5801
*Attorneys for Defendants*

**Gary A. Woodfield, Esq.**
Edwards Angell Palmer & Dodge LLP
1 North Clematis Street, Suite 400
West Palm Beach, FL 33401-4309
Tel: 561-833-7700; Fax: 561-655-8719
Email: gwoodfield@eapdlaw.com
*Attorneys for Defendants*

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com