UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN

MOSHE SAPERSTEIN, et al.,

       Plaintiffs,

v.

THE PALESTINIAN AUTHORITY;
THE PALESTINE LIBERATION
ORGANIZATION,

       Defendants.
_____/

## PLAINTIFF'S NOTICE OF HEARING

Plaintiff hereby respectfully gives notice that a hearing has been scheduled in this matter before Magistrate Judge John J. O'Sullivan on April 29, 2010, at 1:30, regarding the discovery requests and issues set forth below.

This Notice lists the discovery requests and deficiencies regarding which plaintiff seeks leave to move to compel and/or move for sanctions, provides (only where necessary) the minimum factual background needed to understand the purpose and relevance of the requests, and conveys or references the documents relevant to the requests and deficiencies – but pursuant to the Court's order at the April 14, 2010 hearing, contains "[n]o case law [and] [n]o argument" (Tr. 4/14/10 at 29) in support of the relief to be sought by plaintiff at the hearing.

### REQUESTS AND ISSUES

Following are the discovery requests and issues in respect to which plaintiff will seek leave to move to compel or to move for sanctions at the April 29 hearing.

**I.**    **Depositions**

Defendants have refused to comply in full or in part with depositions sought by plaintiffs.

### A. Yasser Al-Khatib

Plaintiff noticed the deposition of Yasser al-Khatib (who was identified in the complaint, on the basis of the statements and convictions of the men convicted of carrying out the attack in which plaintiff was shot, as the PA security forces officer who initiated and organized the attack, *see* DE 8 at ¶¶ 4, 12-28) in his capacity as an officer of the PA. Exhibit 1 at 1.

Defendants failed to produce al-Khatib or seek a protective order, and instead served "objections" to the deposition notice. Exhibit 2.

At the hearing plaintiff will seek leave to compel the PA to produce al-Khatib for deposition.[1]

### B. Ahmed Qurei

In August 2009 the plaintiff noticed the deposition of Ahmed Qurei in his capacity as an officer of the PLO. *See* DE 360-1. Defendants moved for a protective order. DE 359.

In his opposition to the motion for a protective order, plaintiff explained that he sought to depose Qurei for two reasons:

First, when Qurei served as PA Prime Minister he was quoted by a PA website to have admitted that the so-called "Al-Aksa Martyrs Brigades," which carried out the attack on the plaintiff, is part of the PLO's Fatah faction (which defendants admittedly fund). *See* DE 364 at 3 and at Ex. A (attached hereto as Exhibit 3). As defendants have acknowledged, "Plaintiff's efforts to equate Fatah with Al Aqsa [are] **essential** to his theory of liability." *Id*. Accordingly, proving that the PA's own Prime Minister made this statement – a clear admission against party interest – is extremely important to plaintiff's case.

Second, Qurei has been the individual "in charge of supervising Fatah's money" since 1989. DE 364 at 7 (quoting the deposition testimony of the PA's Minister of Civil Affairs). Moreover, according to a statement given by Qurei to the Palestinian news agency Ma'an, since the mid-80's he has held and managed Fatah funds in a bank account listed **in his own name** "for security reasons." *Id*. at 7 and at Ex. D (attached hereto as Exhibit 4).

---

[1] Al-Khatib's name is sometimes transliterated as "Al-Khativ" or "Al-Kativ," but "Al-Khatib" is the preferred and most accurate transliteration.

- 2 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

As explained by plaintiff at length, information regarding the *use* Fatah made of the funds that it received from the defendants is crucial to proving liability in this case. *See id*. at 4-7.

On December 31, 2009, the Court issued an Order denying in part and granting in part defendants' motion for a protective order and holding that "defendants have the option of first providing an individual or individuals for deposition in lieu of Mr. Qurei. However, if the plaintiff is unable to obtain the relevant information sought from the alternative deponent(s), then the defendants shall produce Mr. Qurei for deposition." DE 392 at 1. The Court gave defendants this option in order to possibly avoid burdening a senior executive such as Qurei. *Id*. at 16-17.

On January 11, 2010, plaintiff's counsel asked defendants' counsel whether defendants would produce a witness in lieu of Qurei. Exhibit 5. Defendants replied that they were continuing "to analyze" the December 31 Order and had not made a decision how to proceed. Exhibit 6.

Over a month later defendants informed plaintiff that PA Prime Minister Salam Fayyad would appear to be deposed in lieu of Qurei on March 10 (the last day for discovery). Exhibit 7. Plaintiff was highly surprised by this decision, both because Mr. Fayyad has never been a member of Fatah and because he is far senior to Qurei.

Mr. Fayyad's deposition ultimately took place on March 9, but Mr. Fayyad had no knowledge whatsoever of the information plaintiff sought to obtain by deposing Qurei. Mr. Fayyad had no idea whether Qurei had made the statement – i.e. the party admission – that the "Al-Aqsa Brigades" is part of Fatah and had no knowledge at all of Fatah's accounts or even of the specific Fatah account held and managed by Qurei. *See* Exhibit 8 at 42:11 – 43:20 and 45:6-19 (presenting Fayyad with Qurei's statement (Exhibit 3 hereto) that the Al-Aqsa Brigades is part of Fatah); 53:19 – 55:6 (presenting Fayyad with Qurei's statement (Exhibit 4 hereto) that he holds and manages Fatah funds in an account in his name); 55:21 – 56:18 (questioning Fayyad about Fatah accounts).

Plaintiff's counsel also asked Mr. Fayyad about payments from Fatah to Marwan Barghouti. This question was extremely important because Barghouti was the leader of Fatah/Al

- 3 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Aqsa during years prior to the attack, as detailed in Barghouti's multiple murder conviction by the Tel Aviv District Court. *See* Exhibit 9 at ¶¶ 2, 7-66.

But Mr. Fayyad was unable to answer this question. Exhibit 8 at 71:10-17.

Moreover, Mr. Fayyad freely admitted that he had not spoken to Qurei or taken any other steps to prepare for testifying in lieu of Qurei. *Id*. at 41:1 – 42:10.

Under this Court's order, since Mr. Fayyad was "unable to provide the relevant information sought by the plaintiff, then the defendants must produce Mr. Qurei." DE 392 at 19.

At the hearing plaintiff will seek leave to compel the PLO to produce Mr. Qurei.

C. **Rule 30(b)(6) Witness With Knowledge of PNF Finances**

The plaintiff served a deposition notice on the PLO pursuant to Fed.R.Civ.P. 30(b)(6), requiring it to produce a witness to testify about:

> (1) The origin and amounts of the funds received by, and the recipients and the amounts of the funds paid out by, the Palestine National Fund ("PNF"), between October 1, 2000 and February 18, 2002; and (2) the policies and rules that governed the PNF's distribution and/or payment of finds during the aforesaid time period.

Exhibit 10 at 1 (emphasis added).

The information above is crucial to plaintiff's case for two reasons:

First, defendants have conceded that "there is a money flow from the PA to the PLO and from the PLO to Fatah" (DE 325 at 18) and have also explained that the Palestine National Fund ("PNF") is the name of the PLO's treasury, and that the PA transfers funds to the PNF, which in turn transfers the funds to Fatah. *See* Tr. 8/25/09 at 14:20-21 – 15:5; 19:12-25; 36:17-21.

The information regarding "the recipients and the amounts of the funds paid out" by the PNF will show whether the amounts paid to Fatah were significant or *de minimis*, and whether and to what extent funds were paid directly to Fatah personnel involved in Al Aqsa activities.

Likewise, the information regarding the "origin and amounts of the funds received by" the PNF will show both the actual amounts paid by the PA and what percentage of the PNF's budget came from the PA. The greater the amount and the greater the percentage, the greater the PA's causal link to the funding of Fatah and the greater its liability for Fatah/Al Aqsa terrorism.

- 4 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Second, plaintiff seeks information regarding "the recipients and the amounts of the funds paid out" by the PNF in order to prove defendants' state of mind and intent to support terrorism, and their policy toward terrorism. As defendants have correctly noted, Fatah is only one of several factions that constitute the PLO. *See* DE 325 at 19 ("Fatah is one of the political entities within the PLO, and as such it ought to be funded by the PLO, and it is.").

But another faction of the PLO is the Popular Front for the Liberation of Palestine ("PFLP"), which openly and unabashedly supports and commits terrorism, and has been continuously designated as a terrorist organization under § 219 of the Immigration and Nationality Act since 1997. *See* 62 Fed. Reg. 52650 (1997).

According to a statement made by PFLP leader Jamil Mizher on March 14, 2008, and published by the PFLP on its own website, **the PLO was funding the PFLP as of 2008**. Mizher was asked, during an interview on Al-Jazeera, about "the question of the PLO leadership's cutting the PFLP's financial allocations from PLO funds." Exhibit 11.[2] Mizher responded by rejecting efforts to apply financial pressure to the PFLP. *Id*. Clearly, then, as of March 2008, the PFLP was receiving "financial allocations from PLO funds." *Id*.

Since the PLO was funding the PFLP in 2008 it is reasonable to assume that it was also doing so in the years leading up to the attack on the plaintiff. And if the PLO (using funds received from the PA) was funding the PFLP – a notorious designated terrorist group – at the time of the attack on the plaintiff, that fact would provide very strong evidence for plaintiff's assertion that defendants had a policy of supporting terrorism and an intent to facilitate terrorism. Showing that the defendant had such a policy and intent at that time both supports plaintiff's claim that Al-Khatib was acting within the scope of his agency and employment and on behalf of defendants when he organized the attack (i.e. respondeat superior liability) and satisfies the "apparent intent" requirement for actions under 18 U.S.C. § 2333(a) provided in § 2331(1)(B).

---

[2] Available at

http://www.pflp.ps/english/?q=comrade-mizher-al-jazeera-pflp-will-not-bow-pressu

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

For the same reason – i.e. to obtain evidence regarding defendants' policy and intent – the deposition notice sought testimony regarding "the policies and rules that governed the PNF's distribution and/or payment of finds during the aforesaid time period."

Unfortunately, the PLO also designated Mr. Fayyad to appear as its Rule 30(b)(6) witness (*see* Exhibit 7) and Mr. Fayyad knew absolutely nothing about any of the topics in the deposition notice. *See* Exhibit 8 at 75:17 – 78:9 (questioning Fayyad about funds paid into the PNF); 82:17 – 83:22 and 85:10 – 87:10 (questioning Fayyad about funds paid out by the PNF); 83:23 – 85:2 and 85:10 – 87:10 (questioning Fayyad specifically about funds paid by PNF to other PLO factions besides Fatah); 87:11 – 87:15 (questioning Fayyad about the policies or rules that govern the PNF's distribution or payment of funds).

At the hearing plaintiff will seek leave to move for Rule 37 sanctions against the PLO for its failure to produce a knowledgeable Rule 30(b)(6) witness or, alternatively, to compel the PLO to produce such a witness and pay expenses incurred by plaintiff due to the double depositions.

**D.     Ata Abu Rumaileh**

Plaintiff noticed the deposition of Ata Abu Rumaileh in his capacity as an officer, director or managing agent of defendants. Exhibit 1 at 2.

Abu Rumaileh is a long-time Fatah leader and, as defendants have now confirmed (*see* Exhibit 23 at p. 10) he held and may still hold a high-level position with the PLO (as discussed *infra* defendants have refused to provide current information on Abu Rumaileh's status).

Plaintiff sought to depose Abu Rumaileh because in an interview with the BBC he confirmed that: that Fatah and the "Al-Aksa Brigades" were the same entity, led by the late PA and PLO leader Yasser Arafat:

> JEREMY BOWEN [BBC interviewer]
> So explain to me, Fatah and the Al-Aqsa Martyrs Brigade, are they part of the same organisation? Are you separate, are you together, how close are you?
>
> ATA ABU RUMAILEH (translation)

- 6 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

> Fatah has two sections: a military wing, led by the military and a political wing led by the politicians. **But there is no difference between Fatah and the Al-Aqsa Martyrs Brigades**.
>
> JEREMY BOWEN
> And who is in charge of both of these two parts of the organisation, is it Arafat?
>
> ATA ABU RUMAILEH
> Yasser Arafat

Exhibit 12 at 18-19 (emphasis added).

Defendants failed to produce Abu Rumaileh or seek a protective order, and instead served "objections" to the deposition notice. Exhibit 2.

At the hearing plaintiff will seek leave to move for Rule 37 sanctions against the PLO for failing to produce Abu Rumaileh or, alternatively, to compel the PLO to produce him.

### E. Ziyad Abu Ein

Plaintiff noticed the deposition of Ziyad Abu Ein, the PA's Deputy Minster of Prisoner Affairs. Exhibit 13.[3]

Plaintiff sought Abu Ein's deposition because he was Marwan Barghouti's deputy and close aide in Fatah/Al Aqsa during the period prior to the attack (and sheltered Barghouti when he was wanted by Israel for murder) and therefore has firsthand knowledge about Al Aqsa's activities and sources of funding. *See* Exhibit 15.[4]

Moreover, Abu Ein has repeatedly spoken publicly – and boastfully – about the defendants' involvement in terrorist violence. *See* Exhibit 16.[5]

---

[3] Notably, plaintiff agreed (as he has done in respect to all defendants witnesses) to conduct the deposition in East Jerusalem.

[4] Available at http://www.haaretz.com/hasen/spages/1070733.html.

[5] Available at http://www.memritv.org/clip_transcript/en/2186.htm.

- 7 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

The PA agreed to produce Abu Ein but ultimately failed to do so. To make a long story short, Abu Ein was unable to obtain a permit to enter Israel. The defendants offered to make Abu Ein available in PA-controlled territory ("Area A"), which plaintiff rejected for reasons of personal safety. Defendants offered to arrange a video deposition, which plaintiff declined in light of the difficulties in presenting the witness with exhibits.

However, plaintiff offered to conduct the deposition anywhere in the West Bank under Israeli security control, known as "Area C" (which includes some 60% of the West Bank) in which both Abu Ein and plaintiff and his counsel are able to travel freely and safely. *See* Exhibit 17 ("We are prepared to hold the deposition anywhere in Area C – regardless of the race, creed or religion of the owner of the venue. That gives you hundreds of venues to choose from.").

Defendants never responded to this proposal.

At the hearing plaintiff will seek leave to move for Rule 37 sanctions against the PA for failing to produce Abu Ein or, alternatively, to compel the PA to produce him.

## II.   Interrogatories

At the hearing plaintiff will seek leave to compel the defendants to answer in full the following interrogatories propounded by the plaintiff to which defendants have given no answers or incomplete answers: Interrogatory no. 1 (Exhibit 18); Interrogatories nos. 2-4 (Exhibit 19); and Interrogatories nos. 5, 7-10, 12, 14-17 (Exhibit 20). Defendants' objections and (partial) answers to these interrogatories are attached hereto as Exhibits 21, 22 and 23.[6]

Several background facts are necessary to understanding the relevance of these requests:

Interrogatory no. 1:

Plaintiff's Second Request for Production sought documents containing the information about payments to Fatah sought in this interrogatory. Defendants objected to producing the documents and plaintiff then narrowed the request in an effort to bridge the gap. Exhibit 24. Specifically, plaintiff's letter excluded from production payment of salaries to made Fatah

---

[6] Unfortunately, because defendants' objections and answers reproduce only the interrogatories without the accompanying definitions, plaintiff was constrained to submit both his original interrogatories and defendants' objections and answers.

- 8 -

personnel. Plaintiff narrowed his request "without prejudice to his right to seek the documents excluded by the modifications in the future, should that become necessary." *Id.*

At a hearing on August 25, 2009, plaintiff further voluntarily narrowed his request to exclude regular expense payments and *de minimis* sums. Tr. 8/25/09.

On September 2, 2009, the Court issued an order directing defendants to produce the documents, excluding those reflecting payments of regular expenses and salaries.

Defendants then informed the Court that there were no responsive documents, since **all** payments by them to Fatah constitute regular expenses and salaries. *See* DE 367 at Ex. 2 and 3.

Accordingly, since defendants conveniently swept all their payments to Fatah into the "expense/salary" category, plaintiff served this interrogatory (and, as discussed *infra*, a new document request), seeking information regarding these payments.

Interrogatory no. 2:

Fuad Shubaki is a senior official of the PA who was recently convicted of arranging for transfer of funds directly from the PA to the Al Aqsa Brigades in the years just prior to the attack. *See* Exhibit 25. Notably, Shubaki sought to have the indictment quashed on the grounds that his payments to the Al Aqsa Brigades were made with Arafat's approval, and were therefore legal under Palestinian Authority law. *Id.* at 2-3, 45-46.

Interrogatory no. 5:

Jibril Rajoub is a senior PA security official who during an interview with Al-Jazeera TV stated that "it was Marwan Al-Barghouthi who founded the Al-Aqsa Brigades, according to a decision by Yasser Arafat." Exhibit 26.[7]

In another interview with Al-Jazeera, Rajoub stated that: "The Al-Aqsa Martyrs Brigade is part of Fatah … Fatah can't be divided." Exhibit 27.

Interrogatory no. 7:

Sultan Abu al-Aynan is a Fatah leader who stated in an interview that "Yasser Arafat would condemn and criticize martyrdom operations … but at the same time, the martyr Yasser Arafat used to finance these military operations." Exhibit 28.[8]

---

[7] Available at http://www.memritv.org/clip_transcript/en/999.htm.

- 9 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Interrogatory no. 10:

Imad Faluji, a PA Minister, stated during a televised speech that: "Whoever thinks that the Intifada started because of the hated Sharon's visit to Al-Aqsa Mosque is mistaken. That was only the straw breaking the Palestinian people's patience. This Intifada was already planned since [Arafat] the President returned from the recent talks at Camp David [July 2000]." [9]

Interrogatory no. 16:

Maslama Thabet was an Al-Aqsa leader who told USA Today that: "Our group is an integral part of Fatah … The truth is, we are Fatah itself, but we don't operate under the name of Fatah … We are the armed wing of the organization. We receive our instructions from Fatah. Our commander is Yasser Arafat himself." Exhibit 29.

Interrogatory no. 17:

Mohammed Odwan (or "Edwan") was the PA's media spokesman and told USA Today that the Al Aqsa Brigades are "loyal to President Arafat" and "are working for the interests of the Palestinian people … They are fighting because they think these kind of operations – and I agree – will push forward their independence and their dream of freedom. " Exhibit 29.

### III. Requests for Production

Plaintiff has served defendants with eight requests for production of documents and things. *See* Exhibits 30-37. Defendants have objected to all these requests (*see* Exhibits 38-45) and produced documents in response to only a small number of the requests.

Moreover, even in respect to those requests for which defendants have made a production, the number of documents produced was extremely – and suspiciously – small. Accordingly, on December 30, 2009, plaintiff's counsel informed defendants' counsel that in light of defendants' paltry responses to the requests for production in those few cases that they

---

[8] Available at http://www.memritv.org/clip_transcript/en/2085.htm.

[9] Video of speech available at

http://www.palwatch.org/site/modules/videos/pal/videos.aspx?sort=s&fld_id=140&doc_id=642.

- 10 -

produced at all, and the fact defendants had produced subject to their objections, it appeared that defendants were withholding documents. *See* Exhibit 46.

Plaintiff's counsel requested that "for each document request in response to which you have produced documents you state (a) whether the production includes all responsive documents in defendants' possession or custody, or subject to their control and (b) the specific grounds and/ or objections on the basis of which any documents were not produced." *Id*.

Defendants' counsel refused to respond to this email, or to a follow-up email requesting a answer. Only at a "meet and confer" discussion held between counsel on March 5, 2010, did plaintiff's finally succeed in eliciting from defendants' counsel an answer to this question: defendants' counsel admitted during that March 5 conference that, as plaintiff suspected, defendants had withheld documents even in those limited cases in which they had produced some documents. However, defendants' counsel refused to identify the grounds on which they had withheld documents, the nature of the documents withheld, or provide any other clue that would enable plaintiff to determine which materials, if any, were being legitimately withheld (e.g. under a claim of privilege) and which were not.

In other words, on March 5 defendants admitted for the first time that they have not responded in full to *any* of plaintiff's requests for production.

Accordingly, at the hearing plaintiff will ask the Court to overrule all of defendants' objections to his requests for documents and things – which defendants have exploited to avoid providing a full production to a single request – and will seek leave to move to compel the defendants to comply with *all* his requests for documents and things.

### IV.     Requests for Admissions

Plaintiff served defendants' with a Second Set of Requests for Admissions (Exhibit 47) which defendants objected to and refused to answer. Exhibit 48.

At the hearing plaintiff will seek leave to compel the defendants to respond to his Second Set of Requests for Admissions.

Plaintiff clarifies that the *Knox* decision referred to in Request no. 2 is the conviction of PA/Fatah/Al Aqsa leader Nasser Awis by the Tel Aviv District Court for carrying out a series of terrorist attacks. Exhibit 49. The decision discusses in detail the relationship between Fatah and

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

Al Aqsa and the involvement of Fatah leader Marwan Barghouti in directing and funding Al Aqsa terrorism in order to advance the defendants' political goals. *See e.g. id*. at 17-18.

Date: April 23, 2010               Respectfully submitted,

                                    s/: Isaac M. Jaroslawicz
                                   Isaac M. Jaroslawicz, Esq. (Florida Bar Number: 979510)
                                   E-mail address: Isaac@MyLawyerIsaac.com
                                   **JAROSLAWICZ LAW OFFICES**
                                   1177 Kane Concourse, #222
                                   Bay Harbor Islands, Florida 33154
                                   Telephone:    (305) 398-7739
                                   Facsimile:    (786) 206-3575
                                   Attorneys for Plaintiff Moshe Saperstein

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   s/: Isaac M. Jaroslawicz
Isaac M. Jaroslawicz, Esq. (Florida Bar Number: 979510)
E-mail address: Isaac@MyLawyerIsaac.com
**JAROSLAWICZ LAW OFFICES**
1177 Kane Concourse, #222
Bay Harbor Islands, Florida 33154
Telephone:	(305) 398-7739
Facsimile:	(786) 206-3575
Attorneys for Plaintiff Moshe Saperstein

- 13 -

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com

**SERVICE LIST**

**Saperstein v. The Palestinian Authority**
**CASE NO.:  04-20225-CIV-SEITZ/O'SULLIVAN**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| **Ramsey Clark, Esq.**<br>**Lawrence W. Schilling, Esq.**<br>Ramsey Clark & Lawrence W. Schilling<br>37 W 12th Street, Suite 2B<br>New York, NY 10011<br>Tel: 212-989-6613; Fax: 212-979-1583<br>*Attorneys for Defendants* | **Mark J. Rochon, Esq.**<br>Email: mrochon@milchev.com<br>**Richard A. Hibey, Esq.**<br>Email: rhibey@milchev.com<br>**Timothy P. O'Toole, Esq.**<br>Email: totoole@milchev.com<br>**Lamia R. Matta, Esq.**<br>Email: lmatta@milchev.com<br>**Charles F.B. McAleer Jr., Esq.**<br>Email: cmcaleer@milchev.com<br>**Brian Hill, Esq.**<br>Email: bhill@milchev.com<br>Miller & Chevalier Chartered<br>655 15th Street NW, Suite 900<br>Washington, DC 20005-6701<br>Tel: 202-626-5800; Fax: 202-626-5801<br>*Attorneys for Defendants* |
| **Gary A. Woodfield, Esq.**<br>Edwards Angell Palmer & Dodge LLP<br>1 North Clematis Street, Suite 400<br>West Palm Beach, FL 33401-4309<br>Tel: 561-833-7700; Fax: 561-655-8719<br>Email: gwoodfield@eapdlaw.com<br>*Attorneys for Defendants* | |

JAROSLAWICZ LAW OFFICES
1177 Kane Concourse #222 ● Bay Harbor Islands, Florida 33154 ● T 305.398.7739 ● F 786.206.3575
www.MyLawyerIsaac.com