UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-20225-CIV-SEITZ/O'SULLIVAN

MOSHE SAPERSTEIN,

    Plaintiff,

v.

THE PALESTINIAN AUTHORITY, and THE
PALESTINE LIBERATION ORGANIZATION,

    Defendants.
_____/

## ORDER OVERRULING OBJECTIONS TO MAGISTRATE'S PROTECTIVE ORDER

THIS MATTER is before the Court on Plaintiff's Objections to the Magistrate Judge's Order of July 20, 2010. [DE 524]. Plaintiff appeals Judge O'Sullivan's July 20, 2010 Order [DE 523] Granting Defendants' Motion [DE 499] to Enforce the Court's April 14 and June 11, 2010 Order. The July 20 Order was a protective order that prevented Plaintiff from taking third party depositions after the discovery deadline. Plaintiff filed objections arguing, *inter alia*, that the depositions were trial depositions not subject to the discovery deadline. After reviewing Plaintiff's papers, Defendants' response, the pertinent portions of the record and relevant legal authorities, the Court finds that Judge O'Sullivan's Order was neither clearly erroneous nor contrary to law. Whether characterized as "trial" depositions or discovery depositions, the depositions were subject to the discovery deadline. Therefore, the Court will overrule Plaintiff's objections.

I. **BACKGROUND**

This appeal represents the fourth time the Court has been asked to rule on Plaintiff's request to take six third-party depositions after the close of fact discovery in this case. The difference now is that Plaintiff styles his request to take third-party depositions as "trial depositions." A brief recapitulation of the case management efforts is necessary to provide context to this appeal.

Plaintiff commenced this action in January 2004 alleging the Defendants are responsible for a 2002 shooting in the Gaza Strip in which Plaintiff was injured. In April 2008,[1] the Court ordered the parties to submit

---

[1] Initially, Defendants appeared solely to contest jurisdiction, but otherwise did not defend against this action. When the Defendants failed to properly respond to the Second Amended Complaint, the Court entered default for Plaintiff against Defendants [DE 61]. A trial on damages was held before Magistrate Judge William Turnoff and resulted

a workable case management plan proposing pretrial and trial dates consistent with the parties' discovery needs. [DE 199]. Based on the parties' input, the Court set discovery to close on July 10, 2009, or November 10, 2009, if Plaintiff did not file a summary judgment motion, and the Court set trial to commence January 19, 2010. In August 2009, it was apparent that the parties were not focused on their discovery,[2] so, in an effort to coax the parties into coming up with a workable case management plan, the Court ordered them to file a revised discovery schedule and held a scheduling conference on August 19, 2009.

During the August 19, 2009 Scheduling Conference,[3] the Court raised concerns about the parties' proposed deadline of March 10, 2010, given the need for letters rogatory and Hague depositions, and based upon the parties' conduct to that point.[4] [DE 332 at 18:7-8, 23:21-23]. Plaintiff agreed that the process for letters of request could take about six months.[5] [*Id.* at 40-41]. Furthermore, Plaintiff advised the Court that he could complete fact discovery by March 10, 2010.[6] Following the Conference, the Court adopted the parties' proposed revised dates, and extended the fact discovery deadline to March 10, 2010 and moved the trial date to October 2010,[7] but advised the parties that there would be no further extensions.

---

in a $48 million judgment in Plaintiff's favor. The Court of Appeals vacated the judgment because it was obtained without Defendants' consent to Magistrate jurisdiction, and was not adopted as an order of this Court. [*See* DE 145]. The Court conditionally vacated the default so the parties could proceed to trial on the merits. [*See* DE 209 at 15].

[2]The Court had repeated discussions with the parties to underscore the need to be organized and diligent in undertaking discovery because the evidence and witnesses are overseas, and the discovery requires the cooperation of non-parties over whom the parties have no control.

[3]Because of repeated discovery issues and the need to expedite discovery, Magistrate Judge O'Sullivan, to whom all discovery matters are referred, co-presided at the Conference.

[4]In February 2009, Plaintiff changed counsel. [DE 260, 262, 263]. It appears that with new counsel, Plaintiff adopted a new trial strategy and a new theory for liability, notwithstanding the Court's admonitions about being diligent in prosecuting this action. Starting in March of 2009, there was a significant change in the ability of the parties' counsel to work together in an organized, cooperative, communicative, and cost-efficient manner. [DE 320].

[5]<u>Judge Seitz</u>:           It takes about six months.
   <u>Plaintiff's Counsel</u>:   We agree with that, Judge.

[6]The Court stated that "I am persuaded that I need to move the existing trial date, but I want to make sure that if we come up with this [revised case management plan], given all of the things which we have no control, that this is one we can live by." [DE 332 at 19:20-24]. Additionally, the Court said "do you want to stick with those dates, do so with the understanding that we're putting them in concrete." [DE 332 at 36:24-37:1].

[7]To ensure a smooth trial in this highly polarized case, the Court set an initial pretrial conference for August 16, 2010, at which all motions *in limine* were to be addressed, with a follow-up pretrial conference on September 13, 2010. The need for this approach is highlighted by the fact that the parties filed ninety-one motions *in limine*.

Nevertheless, Plaintiff waited until December 29, 2009, nearly six years after filing his lawsuit, and two and one-half months before the discovery deadline, to move for a letter of request to obtain the depositions of Nizar Dahliz, Naim Mutzran, Fuad Shubaki, Alaa Ibrahim and Matityahu (Matthew) Kalman. The Court issued the letters of request on January 8, 2010. However, the Israeli authorities would not process that letter of request until after the fact discovery deadline.

Two days before the discovery cut-off, on March 8, 2010, Plaintiff filed a Motion for Clarification or, in the Alternative, to Modify Deadline to Receive Third Party Discovery, including the depositions of Nizar Dahliz, Naim Mutzran, Fuad Shubaki, Alaa Ibrahim and Matityahu (Matthew) Kalman, as well as the British Broadcasting Corporation ("BBC"), after the March 10, 2010 fact discovery deadline. [DE 406]. Plaintiff's explanation for why he had waited until December 29, 2009 to request these depositions was because he "was guided by the precedent set in *Gilmore v. Palestinian Authority*," where Israeli authorities arranged for depositions requested pursuant to a Hague request on October 17, 2001, to take place on December 30, 2001. [*Id.* at 12]. Notwithstanding Plaintiff's counsel's colloquy with the Court at the August 19, 2009 Conference about taking six months to process letters of request, Plaintiff argued that he "had ample reason to believe that the depositions sought in the Second Letter of Request, applied for on December 29, 2009, would be completed by March 10, 2010. [*Id.*]. The Court denied Plaintiff's request, because Plaintiff did not show he had been diligent in conducting discovery. [DE 425].

Two days after the Court denied Plaintiff's request to receive discovery after the discovery deadline, Plaintiff filed an "Urgent" Motion for Clarification of the Court's April 13, 2010 Order, requesting that he be permitted to depose the BBC. [DE 428]. Plaintiff later withdrew that motion. [DE 466]. Nearly two months later, on June 9, 2010, Plaintiff filed an "Emergency" Motion for Leave to Take the Deposition of Matityahu (Matthew) Kalman and Related Relief [DE 483]. Plaintiff conceded that "the Court denied the motion, thereby barring Plaintiff from deposing Mr. Kalman (or other witnesses whose depositions were sought)," but requested leave of Court to take the deposition anyway. [DE 484]. On June 11, 2010, the Court entered an Order Striking Plaintiff's "Emergency" Motion because the Court had "already ruled on the matters raised in Plaintiff's Motion." [DE 488 at 1].

Despite the Court's various orders, on June 13, 2010, Plaintiff's counsel informed Defendants that Plaintiff intended to take "the depositions of Nizar Dahliz, Naim Mutzran, Fuad Shubaki and Alaa Ibrahim" "in Tel Aviv between July 26th through July 28th."[8] [DE 501-1 at 5]. Additionally, Plaintiff's counsel informed Defendants that the deposition of "Matthew Kalman will be held on July 29, 2010," [*id.* at 2], and served Defendants with a copy of a deposition subpoena directing a BBC designee to appear for deposition on July 5, 2010 in Brooklyn, New York [*see* DE 501-5]. These are the very same depositions the Court previously ruled Plaintiff could not take after the discovery deadline.

On June 22, 2010, Defendants filed a Motion to Enforce the Court's April 13 and June 11, 2010 Orders [DE 503], which Judge O'Sullivan construed as a motion for a protective order to prevent Plaintiff from taking the depositions of third parties BBC, Nizar Dahliz, Naim Mutzran, Fuad Shubaki, Alaa Ibrahim and Matityahu (Matthew) Kalman. Plaintiff filed an opposition [DE 509], and Defendants filed a reply [DE 522]. On July 20, 2010, Judge O'Sullivan granted Defendants' motion and entered a protective order.

Judge O'Sullivan rejected Plaintiff's attempt "to avoid the Court's prior Orders by arguing that the depositions of these third party witnesses are trial depositions and, as such, are not precluded by the Court's discovery deadlines." [DE 523 at 2]. In so doing, Judge O'Sullivan found "that these 'trial' depositions are actually discovery depositions which are not permitted under the Court's prior Orders (DE# 425, 488) and which will exceed the ten deposition limit set forth in Rule 30 of the Federal Rules of Civil Procedure." [*Id.*] Judge O'Sullivan also concluded that the Defendants' motion should "be granted because these third party depositions will disrupt the Court's trial schedule." "In sum, the plaintiff cannot circumvent the Court's prior Orders by recharacterizing these third party depositions as trial depositions . . . [because t]he Court has made clear to the plaintiff that he may not take third party discovery now that the discovery deadline has long passed." [*Id.* at 4].

II.     **STANDARD OF REVIEW**

Under Rule 72 of the Federal Rules of Civil Procedure, the district judge will not disturb a magistrate judge's ruling on a discovery order unless it is shown that the order "is clearly erroneous or is contrary to law."

---

[8] Plaintiff also informed Defendants that if they failed to attend the depositions, that they did so at their "own risk." [DE 503, Ex. 1 at 2].

FED. R. CIV. P. 72(a). This burden rests with the party filing the objections. FED. R. CIV. P. 72. The party must specifically identify the portions of the magistrate's order to which objections are made and the basis for such objections. *Marsden v. Moore*, 847 F.2d 1536 (11th Cir. 1988). When a party objects to the magistrate judge's order, the district court is required to conduct a *de novo* review of the contested issues. An objection that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge, and if a party simply reiterates its original arguments, the court reviews the order only for clear error. Furthermore, the district court also may not consider new materials or legal arguments raised for the first time in the objection. *United States v. S. Fabricating Co.*, 764 F.2d 780, 781 (11th Cir. 1985).

### III.   DISCUSSION

The majority of Plaintiff's July 25, 2010 Objections consist of near-verbatim repetition of the arguments contained in his July 9, 2010 Opposition to Defendants' Motion to Enforce [DE 509] and Plaintiff's March 8, 2010 Motion for Clarification or, in the Alternative, to Modify Deadline to Receive Third Party Discovery [DE 406]. Thus, this Court has already considered and ruled upon many of the arguments Plaintiff raises in objecting to Judge O'Sullivan's July 20, 2010 Order.[9] Additionally, many of his objections, simply restate arguments made to Judge O'Sullivan,[10] with no explanation why the ruling is clearly erroneous or contrary to law. Nevertheless, the Court will address each of Plaintiff's arguments in turn.

   *A.   It Was Not Clearly Erroneous To Hold Plaintiff's Depositions To The Scheduling Order*

Plaintiff's principal argument is that Judge O'Sullivan's ruling is in error because Plaintiff seeks these depositions in lieu of in court trial testimony, and the Court has set no deadline for taking depositions, only for

---

[9]For example, Plaintiff reiterates that he "was guided by the precedent set in *Gilmore v. Palestinian Authority*," such that he "therefore had ample reason to believe that the depositions sought in the Second Letter of Request, applied for on December 29, 2009, would be completed by March 10, 2010." [*Id.* at 5].

[10]For example, before Judge O'Sullivan, Plaintiff argued that "Defendants' motion [for a protective order] should be denied in light of the holdings in *Chrysler*," now he argues that "[t]he July 20 Order should be reversed in light of the holdings in *Chrysler*." [Compare DE 509 at 10 with DE 524 at 9]. Additionally, Plaintiff reargues that the depositions will not disrupt the trial schedule because "[i]f the witnesses happened to live within 100 miles of this Court, the plaintiff could simply subpoena them to trial. . . . [T]rial testimony is *always* subsequent to, and so is unnecessary and irrelevant to, the preparation of a Joint Pretrial Stipulation and other pre-trial filings. [*Id.* at 12 (quoting DE 509 at 11) (emphasis in original)]. Further Plaintiff reiterates that "Rule 30(1)(2)(A)(I) limits only those depositions 'taken under this rule or Rule 31.' The depositions in Israel are not being taken pursuant to Rule 30 or 31, but pursuant to the Hague Convention, and the ten deposition limit is therefore inapplicable to those depositions." [*Id.* at 11 (quoting DE 509 at 12)].

completion of discovery. [DE 524]. Plaintiff cites *Charles v. Wade*, 665 F.2d 661 (5th Cir. 1982), *cert. denied*, 460 U.S. 1036 (1983), and *Chrysler Intern. Corp. v. Chemaly*, 280 F.3d 1358 (11th Cir. 2002), for the proposition that a district court abuses its discretion when it prevents a litigant from taking the trial deposition of a witness unable to attend trial on the grounds that the discovery period has closed. That is not the holding of either *Charles* or *Chrysler*. Furthermore, the facts in *Charles* are entirely distinguishable, and the *Chrysler* decision, which is directly on point, compels this Court to overrule Plaintiff's objections.

*Charles* involved a request to take a single deposition where the anticipated testimony went directly to the heart of the case and there would have been no prejudice to the opposing party.[11] Judge O'Sullivan distinguished *Charles* because unlike the Plaintiff in *Charles*, Plaintiff does not know what the testimony of the deponents will be. [DE 523 at 2]. Without citation to statute, case law, or rules of procedure, Plaintiff argues that "[i]t is irrelevant, as a matter of law, that plaintiff does not know in advance what these trial witnesses will testify to." [DE 524 at 10-11]. Instead, Plaintiff claims that under *Chrysler*, the salient consideration is whether the scheduling order set a deadline for taking all depositions. [*Id.* at 11].

In *Chrysler*, Plaintiff, an automobile manufacturer, appealed the district court's entry of a protective order preventing it from deposing a witness located in South Africa. As here, the district court had moved the trial date

---

[11] It would be unfair to permit Plaintiff, in July 2010, two weeks before the Pretrial Conference to again dispatch lawyers to the Middle East to take arguably unnecessary, inadmissible depositions. This is especially so, given that Plaintiff had ample opportunity to obtain these depositions prior to the discovery deadline, as well as because Plaintiff's counsel represented that Plaintiff could complete the depositions prior to the discovery deadline.

As to two of the depositions, Plaintiff seeks foundational testimony from Matityu (Matthew) Kalman and the BBC, evidence which Plaintiff was aware of in 2003. The BBC deposition is to authenticate a documentary (and outtakes) broadcast in 2003. Mr. Kalman's deposition is to confirm non-party hearsay statements reported in an article Mr. Kalman wrote about the Al Aqsa Brigade published in the USA Today on March 14, 2002.

The remaining four depositions are of prisoners in Israel, Nizar Dahliz, Naim Mutzran, Fuad Shubaki and Alaa Ibrahim. Mssrs. Dahliz and Mutzran, who were convicted in 2003 for carrying out the attack in which Plaintiff was injured, presumably would testify consistent with their trial testimony, that they did not carry out the attack in which Plaintiff was injured. [DE 524, Ex. D]. The deposition of Mr. Ibrahim, a purported member of the Al Aqsa Brigade was possibly to rebut Mssr. Dahliz and Mutzran's testimony. Fuad Shubaki, the PA finance minister convicted for transferring funds from the PA to the Al Aqsa Brigade, presumably would testify consistent with his trial testimony, that the PA did not transfer funds to the Al Aqsa Brigade. [DE 524, Ex. G].

Plaintiff indicates he did not know what these prisoners would say at deposition. Thus, it is not clear that, even if he had taken their depositions, that Plaintiff would have used them at trial. The fact that Plaintiff did not know what they would say only underscores that these depositions were simply for purposes of discovery. Furthermore, if these depositions were critical to issues at trial, Plaintiff presumably would have made efforts to preserve their testimony long before December 29, 2009, nearly six years after filing the case, and two months before the discovery deadline.

and discovery deadline multiple times. *Chrysler*, 280 F.3d at 1359-60. Chrysler moved for a letter of request about fifteen months after filing the lawsuit. *Id.* at 1360. When the district court granted the request, it warned the parties that the taking of the deposition would not serve to extend the discovery deadline. *Id.* at 1359. The district court issued the letter rogatory on February 4, 2000, but the South African authorities did not execute the request until April 28 and they scheduled the deposition for June 6. *Id.* at 1360. Upon learning that the deposition had been scheduled after the April 25 discovery deadline, Defendants moved for a protective order to prevent Chrysler from taking the deposition. *Id.* The district court granted the protective order, but Chrysler took the deposition anyway, and when Chrysler sought to introduce the deposition at trial, the district court would not allow it. *Id.*

The Plaintiff in *Chrysler* argued that there is a difference between a discovery deposition and a *de bene esse* deposition, and that discovery deadlines cannot apply to the latter. *Id.* The Eleventh Circuit rejected the notion "that it was intrinsically a legal error to treat *de bene esse* depositions as subject to the discovery deadline," and affirmed the entry of a protective order precluding a foreign deposition where the district court warned that all depositions would be subject to the discovery deadline and that the party seeking to use the deposition at trial had unduly delayed in seeking to obtain it. *Id.* at 1632.

> For a court to treat discovery deadlines as applying to all depositions is not an uncommon or inherently unreasonable kind of shorthand to say "be done with deposition taking by 'X' date." So, parties who delay in taking a needed deposition and who assume that a district court will draw (when the Rules do not and if the pretrial order does not) a distinction, for pretrial scheduling purposes, between different kinds of depositions assume a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date.

*Id.* at 1361 n.8.

In this case, this Court made it clear that depositions cannot be taken after the discovery deadline. Although Plaintiff argues that "this Court never gave the parties such an indication" [DE 524 at 9-10], the record shows otherwise. During the August 2009 Conference, Plaintiff was forewarned that depositions taken pursuant to the Hague convention had to be taken by the March 10, 2010 fact discovery deadline. [*See* DE 332 at 18:7-8, 23:21-23].

    1. *Plaintiff Failed To Articulate How Or Why It Was Erroneous To Consider Disruption To The Trial Schedule*

Next, Plaintiff argues that the July 20 Order should be reversed because Judge O'Sullivan stated that "these third party depositions will disrupt the Court's trial schedule." [DE 524 at 12]. Not only does Plaintiff fail to state how Judge O'Sullivan erred, but Plaintiff fails to articulate why the Order should be reversed. Instead, he quotes his earlier brief, which argues that "Defendants fail to articulate how or why obtaining trial testimony three months before trial would 'disrupt' anything. [*Id.*] However, it is Plaintiff's burden to show that it was clear error for Judge O'Sullivan to consider the trial schedule in his decision, a burden that Plaintiff has failed to carry.

    2. The *Gilmore* *"Empirical Precedent" Does Not Excuse Plaintiff's Undue Delay*

In *Chrysler*, the Eleventh Circuit considered it important that the party seeking the depositions waited fifteen months after the action was filed before initiating the Hague process. Plaintiff's delay in this case is similar. Plaintiff has the burden to prosecute his claim, and presumably he undertook a pre-suit investigation to support the allegations in his complaint. As of September 2008, the parties were on notice that the case would proceed with dispatch, yet Plaintiff delayed another fourteen months, and waited until two months before the discovery cut-off, before requesting letters rogatory to obtain depositions of known deponents. Plaintiff acknowledged in August 2009, that the letter rogatory process could take up to six months. "[P]arties who delay in taking a needed deposition . . . assume a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date." *Chrysler*, 280 F.3d at 1361 n.8.

Now Plaintiff contends that Judge O'Sullivan's Order does not explain why it was unreasonable for Plaintiff to rely on *Gilmore*, as an "empirical precedent." Given counsel's acknowledgment to the Court that it can take up to six months for letters rogatory to be processed, the reliance on two docket entries in a nine year old district court case from another circuit as persuasive empirical precedence is at best specious.

   B. *It Was Not Clearly Erroneous To Conclude That Plaintiff's Depositions Were For Discovery Purposes*

Plaintiff objects to Judge O'Sullivan's finding that the trial depositions sought "are actually discovery depositions" simply arguing, albeit respectfully, that "there is no basis for this conclusion." [DE 524 at 11].

Unfortunately for the Plaintiff, the record amply supports this conclusion. When Plaintiff requested the Letters of Request, he sought discovery. [DE 403 at 2, 3, 5, 6]. The record is clear that prior to the discovery cut-off Plaintiff intended to depose these six individuals solely for the purpose of discovery.[12] Furthermore, when Plaintiff first sought to obtain these depositions after the discovery deadline, he sought to take these depositions for discovery purposes and requested an extension of the fact discovery deadline accordingly. It was only after the Court denied Plaintiff's requested extension that Plaintiff asserted these depositions are "trial depositions." Thus, the Court cannot find error in Judge O'Sullivan's conclusion that "[a]t the time the Letter of Request was issued by this Court, the plaintiff sought to take a discovery deposition," but "[n]ow that the discovery deadline has passed and the Court has refused to extend the deadline, the plaintiff claims these depositions are really trial depositions." [DE 523 at 2].

    C.    *Rule 30 Limits the Taking of Depositions*

Finally, Plaintiff argues that Judge O'Sullivan's conclusion that the depositions count toward the ten deposition limit of Rule 30 should be reversed. In support, Plaintiff quotes his earlier brief but simply disagrees with Judge O'Sullivan's conclusion. He does not explain why Judge O'Sullivan's conclusion should be reversed, let alone that the conclusion is somehow erroneous. As such, the Court will review for clear error.

The Hague convention provides a system for obtaining evidence located abroad; Rule 28(b)(4) of the Federal Rules Civil Procedure allows a party to obtain depositions by letters rogatory. Simply because the letters rogatory were issued pursuant to the Hague convention does not eviscerate the Federal Rules of Civil Procedure or the ability of this Court to control the number of depositions a party may take. Plaintiff's *ipse dixit* claim to the contrary does not persuade the Court that Judge O'Sullivan's conclusion was clearly erroneous or contrary to law.

---

[12]One only has to look at three sets of papers in which Plaintiff categorizes the depositions as discovery from non-parties. For example, in Docket Entry 406-1, Plaintiff references "the discovery sought in the pending Letter of Request." In Docket Entry 419, Plaintiff states, in regard to these depositions that "plaintiff will receive this discovery very shortly." And in Docket Entry 416, Plaintiff states that March 10, 2010 is the "deadline for <u>receiving</u> discovery," including these depositions.

IV. CONCLUSION

As set forth above, Plaintiff failed to carry his burden to establish that Judge O'Sullivan's well-reasoned order was either clearly erroneous or contrary to law. Therefore, Plaintiff's objections are overruled. Accordingly, it is

ORDERED that Plaintiff's Objections to the Magistrate Judge's Order of July 20, 2010 [DE 524] are OVERRULED.

DONE AND ORDERED in Miami, Florida, this 4th day of October, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge John J. O'Sullivan
Counsel of Record